1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9   LYNNE HOUSERMAN,                          No.

10              Plaintiff,                    COMPLAINT

11          v.

12   COMTECH TELECOMMUNICATIONS              JURY DEMAND
     CORPORATION, FRED KORNBERG, AND
13   MICHAEL D. PORCELAIN,

14              Defendants.

15

16

17

18

19

20

21

22

23

24

25

26

COMPLAINT

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL (206) 407-2200   FAX (206) 407-2224

## I.    NATURE OF ACTION

1.1    Plaintiff Lynne Houserman brings this action for breach of contract, failure to pay wages due, unlawful withholding of wages, and unlawful retaliation against her former employer, Comtech Telecommunications Corp. ("Comtech"); Fred Kornberg, its Chairman, Chief Executive Officer, and President; and Michael D. Porcelain, its Senior Vice President and Chief Operating Officer (collectively, the "Defendants").

## II.    PARTIES

2.1    Plaintiff Lynne Houserman is the former President of Defendant Comtech's Safety and Security Technologies group ("SST").  She is a citizen of King County, Washington. Virtually all events giving rise to this lawsuit occurred in Washington state.

2.2    Defendant Comtech is a Delaware corporation with principal place of business in New York.  Comtech owns and controls TSYS.

2.3    Defendant Fred Kornberg is an individual residing in the State of New York.

2.4    Defendant Michael D. Porcelain is an individual residing in the State of New York. Mr. Porcelain served as Comtech's Chief Financial Officer for twelve years prior to being promoted to COO in October 2018.

## III.    JURISDICTION AND VENUE

3.1    This Court has subject matter jurisdiction over Ms. Houserman's claims pursuant to 28 U.S.C. § 1332(a)(1).

3.2    Venue properly rests with this Court pursuant to 28 U.S.C. § 1391(b)(2).  All of the actions alleged herein transpired in this district.  Defendants have caused a subsidiary of Comtech, TeleCommunications Systems, Inc., ("TSYS") to sue Plaintiff in this district.  This lawsuit is

COMPLAINT – 1

directly related to *TeleCommunication Systems, Inc. v. Houserman*, case no. 2:19-CV-00336-RAJ (W.D. Wash Mar. 6, 2019), as, among other reasons, Plaintiff Lynne Houserman asserts herein that her 2014 employment agreement with TSYS was replaced and/or superseded by her employment agreement with Comtech after Comtech acquired TSYS and entered into a new employment contract with materially different terms.

## IV.   FACTS

4.1     On September 2, 2014, Ms. Houserman executed an employment agreement with TSYS (the "2014 TSYS Agreement") under which she would become Senior Vice President, Safety and Security Group of TSYS.

4.2     On February 27, 2016, Ms. Houserman signed an employment agreement offered by Comtech (the "2016 Comtech Agreement") under which she would become President of Comtech's Safety and Security Technologies Group ("SST").  *See* Exhibit A, attached hereto.  In addition to being a new position with a new employer, the 2016 Comtech Agreement contained other material terms that conflicted with her old 2014 TSYS Agreement: (1) new compensation, (2) new bonus plan and structure (using Comtech's goal sheets), (3) new stock compensation, (4) new benefits, and (5) a new reporting structure.  Notably absent from the 2016 Comtech Agreement were any non-solicitation or non-competition provisions.

4.3     The 2016 Comtech Agreement superseded or replaced the 2014 TSYS Agreement.

4.4     The 2016 Comtech Agreement provided that Ms. Houserman would be eligible to receive a retention bonus of up to one year's base salary subject to her continued employment with Comtech through the third anniversary of the closing of the acquisition of TSYS.  The 2016 Comtech Agreement further provided that if Ms. Houserman's employment was terminated

COMPLAINT – 2

without "cause" prior to her third anniversary, she would be eligible to receive a pro-rata portion of the Retention Bonus (which was defined in the 2016 Comtech Agreement as the "Pro-Rata Retention Bonus," (adopted herein as well)).

4.5     In addition, the 2016 Comtech Agreement defined "cause" as follows:

> Your willful misconduct (including a failure to act), willful neglect, willful malfeasance or gross negligence in carrying out your duties hereunder, or "willful breach" of this letter agreement . . . . Under this provision, "willful breach" shall include, but not be limited to, insubordination, serious dereliction of fiduciary obligation, chronic abuse by you of alcohol or narcotics, a violation of any material Company rule, regulation or policy, or a serious violation of any law governing the workplace.  It is provided further that **no act or failure to act shall be considered "willful" if you reasonably believed in good faith that such act or failure to act was in the best interests of Company and its affiliates**[.]

(emphasis added).

4.6     Following the acquisition of TSYS, Ms. Houserman was the only woman in executive leadership at Comtech.

4.7     Between April 27, 2016, and August 13, 2016, Ms. Houserman was on maternity leave after giving birth to her second child.

4.8     While Ms. Houserman was on maternity leave, Comtech decided to move SST's call handling responsibilities from Ms. Houserman's division to a division run by a male president, Jay Whitehurst.  At that time, call handling represented a small portion of Ms. Houserman's responsibilities at Comtech.

4.9     In September 2016, Ms. Houserman, Mr. Whitehurst, and Chief Financial Officer Michael Porcelain reached an agreement regarding the effect of the transfer of the call handling responsibilities on Ms. Houserman's variable bonus compensation for FY 2017.[1]  As a loss was

---

[1] Comtech's FY 2017 ran from August 1, 2016 – July 31, 2017

COMPLAINT – 3

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL (206) 407-2200   FAX (206) 407-2224

projected for the call handling division for FY 2017, Ms. Houserman agreed that her actual 2017 "pre-tax profit" achievement would be reduced by $6.297 million for the purposes of calculating the bonus achievement against the division's goals as set by the Executive Compensation Committee on her 2017 Goal sheet, regardless of the actual pre-tax profit performance of the call handling division.  If the call handling division had a loss over $6.297 million, it would reduce Mr. Whitehurst's pre-tax profit achievement number.  However, if the call handling division had a profit before tax loss less than $6.297 million, Ms. Houserman's co-worker, Jay Whitehurst's pre-tax profit achievement number would be credited for that amount.

4.10.    Comtech and Ms. Houserman agreed upon a set bonus amount if Ms. Houserman met all of Comtech's four different targeted goals, illustrated in the table below:

| Description of Goals | Target Amts. ($) | % of Target Payout (total =100%) |
|---|---|---|
| 1.  Pre-tax profit (actuals as defined less $6,297,000) | $6,000,000 | 25% |
| 2.  New Orders | $95,000,000 | 25% |
| 3.  "Free" Cash Flow | $17,500,000 | 25% |
| 4.  Personal Goals | 5  non-monetary goals each weighted 5%. | 25% |

4.11    Thus, under this agreement, the Fiscal Year 2017 Goal Sheet for Ms. Houserman's division would include a $6.297 million reduction from SST's actual pre-tax profit achievement for the fiscal year beginning August 1, 2016, and ending July 31, 2017 ("FY 2017 Goal Sheet").

4.12    In September 2016 or at any time since, Ms. Houserman, Mr. Whitehurst, and Mr. Porcelain did not discuss nor come to any agreement regarding the effect of the transfer of Ms. Houserman's call handling responsibilities on future pre-tax profit goals for FY 2018.[2]  In fact,

---

[2] FY 2018 ran from August 1, 2017 to July 31, 2018.

COMPLAINT – 4

LAW OFFICES
**CALFO EAKES & OSTROVSKY** PLLC
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL (206) 407-2200   FAX (206) 407-2224

Mr. Porcelain's September 21, 2016 email setting forth the agreement between Comtech, Jay Whitehurst and Ms. Houserman only stated that the $6.297 million reduction to her achievement applied to FY 2017, and it did not reference treatment for subsequent years.

4.13    In September 2017, which was at the beginning of FY 2018, Comtech sent Ms. Houserman a Fiscal Year 2018 Goal Sheet for the fiscal year beginning August 1, 2017, and ending July 31, 2018 ("FY 2018 Goal Sheet") and demanded that she sign and return it within two business days.

4.14    Ms. Houserman signed the FY 2018 Goal Sheet without noticing that it included the same $6.297 million reduction from SST's pre-tax profit achievement that had been included in the FY 2017 Goal Sheet.

4.15    The FY 2018 Goal Sheet dramatically increased the pre-tax profit achievement required for Ms. Houserman to meet her target pre-tax profit goal, as illustrated by this table:

| Description of Goals | Target Amts. ($) | % of Target Payout (total =100%) |
|---|---|---|
| 1. Pre-tax profit (*actuals will be calculated with a reduction of $6,297,000*) | *$17,500,000* | 25% |
| 2. New Orders | $95,000,000 | 25% |
| 3. "Free" Cash Flow | $20,00,000 | 25% |
| 4. Personal Goals | 5 non-monetary goals each weighted 5%. | 25% |

(emphasis added).

4.16    In early November 2017, when SST's finance director was calculating the proper amount of funds to withhold for bonuses, he brought the $6.297 million reduction from pre-tax profit achievement included in her division's FY 2018 Goal Sheet to Ms. Houserman's attention. Because she, Mr. Whitehurst, and Mr. Porcelain had not discussed any reduction from SST's FY 2018 pre-tax profit achievement for the purpose of calculating bonuses, Ms. Houserman believed

COMPLAINT – 5

in good faith that the $6.297 million reduction had been mistakenly included on the FY 2018 Goal Sheet.  To include the $6.297 million reduction amounted to a substantial increase in the pre-tax profit achievement above her pre-tax profit Goal ($17,500,000 + $6,297,000) required to earn a bonus for FY 2018.

4.17   As a division president, she is required to instruct SST's finance director to withhold a sufficient amount of funds from the monthly forecast to cover the annual expense of bonuses for both herself and the more than 300 employees in her division.  In addition to the bonus expense for her bonus, Comtech's policy is that 5% of a division's pre-tax profit should be accrued for a bonus pool for division employees not otherwise covered by a variable compensation plan.  So when Ms. Houserman was informed that Comtech sought a $6.297 million reduction to SST's pre-tax profit achievement for FY 2018, she immediately contacted Mr. Fred Kornberg to notify him that Comtech had made an error in the FY 2018 Goal Sheet that would cause a negative impact to her entire division's annual bonuses.  On information and belief, with the $6.297 million reduction taken into consideration, no other Comtech president had his pre-tax profit achievement goal increased to the same extent as Ms. Houserman for FY 2018.  In addition, Ms. Houserman did not agree to any FY 2018 reductions to her division's pre-tax profit achievement as a result of Comtech's decision to move call handling to another executive.

4.18   Between November 2017 and January 2018, Ms. Houserman repeatedly reached out to Chief Executive Officer Fred Kornberg regarding her concern that the $6.297 million reduction in her FY 2018 pre-tax profit for the purpose of calculating SST's annual bonus pool for herself and her division's employees was a mistake.  She emailed Mr. Kornberg on November 9, 2017, November 10, 2017, November 28, 2017, and February 13, 2018, to point out the $6.297

COMPLAINT – 6

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL (206) 407-2200   FAX (206) 407-2224

million reduction error in her FY 2018 Goal Sheet and repeatedly asked for a timeframe in which her inquiry would be addressed.  Mr. Kornberg never gave her an answer as to whether the $6.297M was a mistake or for what reason it was applied to her FY2018 Goals. Instead, he replied with a number of excuses such as it was being researched, later that he would address it after a Shareholder's meeting and again, that she should be patient, as the fiscal year was "only" half over. In fact, her November 2017 inquiry was only ever answered on the day of her termination in April 2018, when she was first told that Comtech had intended to apply a $6.297 million reduction to her achievement for 5 years, beginning in FY 2017.

4.19   She also documented her concerns in reports including her Q1 and Q2 Quarterly Financial and Disclosure Consideration Checklists and her January 2018 Monthly President Report. Between November 2017 and February 2018, while she waited for the company to respond to her concerns, Ms. Houserman instructed SST's finance director to accrue bonus expenses for interim monthly financial packages based on SST's pre-tax profit goal without taking the $6.297 million reduction into account.  She took these actions in good faith based on her belief that the reduction on her FY 2018 Goal Sheet was a mistake. She also believed this more conservative approach to expense accruals was in the best interests of the company, so Comtech would not have to make an adjustment later to correct what she believed was an error.

4.20   The real reason for the delay in responding to Ms. Houserman, was that Mr. Kornberg was concerned about a substantial renewal contract that Ms. Houserman was working on obtaining for Comtech.

4.21   During a February 13, 2018 telephone call on an unrelated topic, Mr. Porcelain, for the first time, told Ms. Houserman that he believed the $6.297 million reduction in FY 2018 pre-

COMPLAINT – 7

tax profit had not been a mistake.  He claimed that he was not privy to the Executive Compensation Committee's final decisions, but that he guessed that the pre-tax profit achievement reduction was intended to be a "call-up" to $23,797,000 for FY 2018 from the goal of $17,500,000 or that that the reduction was a repeat of the same treatment of call handling for FY 2017.

4.22    Ms. Houserman protested, claiming that if it was a "call-up", that her $17,500,000 pre-tax profit goal was already 9% higher than her division's pre-tax profit Board-approved budget of $16,000,000. A "call-up" to $23,797,000 (with the $6,297 reduction) was a 48% increase from her division's Board-approved budget pre-tax profit target of $16,000,000.

4.23    Ms. Houserman questioned whether other Comtech presidents were being given goals that were a 48% increase from their pre-tax profit budget targets (taking into consideration the $6.297 million reduction to her achievement), and requested data concerning the goal sheets for the 5 other divisional presidents who had similar job functions and responsibilities.

4.24    Ms. Houserman also protested claiming that if it was related to call handling performance, she had never agreed to a FY 2018 compensation impact when Comtech made a decision to move call handling to another executive. Even if she had agreed to this, Ms. Houserman argued that a $6.297 million reduction to her pre-tax profit would be inappropriate, given the call handling division's (1) better-than-expected financial performance in FY 2017 and (2) projected losses that were significantly lower than $6.297 million in FY 2018.

4.25    She told Mr. Porcelain that she believed that she was being treated unfairly because no other division president was required to over-achieve their pre-tax profit budget goals in order for his division to receive bonus compensation.  All other division presidents were male.

COMPLAINT – 8

4.26    Mr. Porcelain cautioned Ms. Houserman about pressing the issue, telling her to be "careful what she wished for" in pursuing this issue with the Board and threatening that Ms. Houserman's efforts to correct the FY 2018 Goal Sheet could lead Comtech to claw back portions of her past bonuses or increase her FY 2018 bookings target, which she was over-achieving at the time.

4.27    Mr. Porcelain called Ms. Houserman the following day, telling her not to take anything he'd said the day prior as factual, but that from a compliance perspective, Ms. Houserman was to document her concerns and send them to Mr. Porcelain, who served as Comtech's Compliance Officer.  Ms. Houserman documented her concerns about the FY 2018 pre-tax profit issue and Mr. Porcelain's threats of retaliation in an email to Mr. Porcelain on February 18, 2018.  After receiving no response, she forwarded her concerns to Mr. Kornberg on February 27, 2018 to ensure he was aware of Mr. Porcelain's threats of retaliation as well.

4.28    On March 19, 2018, Mr. Kornberg notified Ms. Houserman that Comtech had assigned an attorney from Proskauer Rose LLP to purportedly investigate her concerns, including allegations of sex discrimination and Mr. Porcelain's threats of retaliation.  Proskauer Rose LLP had a long relationship with Comtech and its executives and regularly performed legal work for Comtech.

4.29    Ms. Nicole Eichberger of Proskauer Rose LLP conducted an "investigation" of Ms. Houserman's claims, but it quickly became apparent that she had predetermined the outcome, as, among other reasons, she focused more on Ms. Houserman's direction to accounting to accrue bonus expenses rather than on Ms. Houserman's allegations of disparate treatment with respect to the proposed $6.297 reduction to her pre-tax profit achievement on her FY 2018 Goal Sheet.

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL (206) 407-2200   FAX (206) 407-2224

4.30    On April 2, 2018, Ms. Houserman attended a conference call with Mr. Kornberg and Comtech's outside attorney from Proskauer Rose LLP regarding the investigation. Comtech's attorney purported to recount the nature of her investigation and her purported conclusion that Ms. Houserman's allegations of sex discrimination and retaliation were not substantiated. Further, for the first time, Ms. Eichberger told Ms. Houserman during this conference call that it was Comtech's intent to reduce her pre-tax profit achievement by $6.297 million each year for a full five years after transferring call handling responsibilities to another executive. Ms. Eichberger explained that Mr. Porcelain commonly used the phrase "be careful what you wish for" to everybody "as a general statement" and "as a euphemism." Ms. Eichberger did not provide a written copy of her findings to Ms. Houserman.

4.31    Immediately thereafter, Mr. Porcelain terminated Ms. Houserman's employment with Comtech. The termination letter falsely and incorrectly alleges that Ms. Houserman's termination was for "good cause" due to her instruction to SST's finance director to accrue expenses for the division's FY 2018 bonuses based on the assumption that the $6.297 million reduction in pre-tax profit was a mistake.

4.32    Among other things, Comtech did not take into account Ms. Houserman's good faith, reasonable belief that the reduction was a mistake and her good faith, reasonable belief that the conservative accrual approach was in the best interest of the company. Furthermore, Comtech failed to take into account Mr. Kornberg's utter failure to communicate whether or not the $6.297 million reduction in pre-tax profit on her FY 2018 Goal Sheet was a contributing factor to Ms. Houserman's accrual of additional bonus related expenses.

COMPLAINT – 10

4.33    Comtech waited to terminate Ms. Houserman until after she secured a large contract renewal worth $134 million to provide 9-1-1 services to a major wireless carrier for Comtech. Comtech announced the contract in a February 20, 2018, press release through Business Wire.

4.34    Comtech refused to pay Ms. Houserman the retention benefits that were due to her under the 2016 Comtech Agreement, including a retention would have amounted to more than two-thirds of a year's worth of salary.  In addition, it refused to pay her for various prior incentive awards, including her 2017 bonus and stock options and grants, that amounted to more than $200,000 at the time of her termination.

4.35    The amount in controversy in this lawsuit, exclusive of interest and costs, exceeds the sum or value of $75,000.

## V.    CAUSE OF ACTION ONE:
## BREACH OF CONTRACT AGAINST DEFENDANT COMTECH

5.1    Ms. Houserman repeats, as if fully set forth herein, paragraphs 1.1 through 4.35.

5.2    The 2016 Comtech Agreement is the only valid contract between Ms. Houserman and Comtech and its affiliates, including TSYS.

5.3    Ms. Houserman has performed all of her required obligations under the 2016 Comtech Agreement up until the date of her termination.

5.4    Ms. Houserman's termination by Comtech was without "cause," as that term is defined in the 2016 Comtech Agreement.  However, Comtech falsely asserted that it had "cause" to terminate Ms. Houserman.

5.5    As a result of its erroneous belief that it had "cause" to terminate Ms. Houserman, Defendant Comtech has refused to provide Ms. Houserman with the separation benefits due under the 2016 Comtech Agreement, including, without limitation, her "Pro-Rata Retention Bonus" and

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
TEL (206) 407-2200    FAX (206) 407-2224

cancelled or clawed-back certain stock equity grants and her 2017 bonus.

5.6     Comtech's unjustified, unlawful termination of Ms. Houserman and assertion that she was terminated with "cause" rendered Ms. Houserman's performance of a "release" impossible, and Comtech failed to provide Ms. Houserman with the "Release" which the 2016 Comtech Agreement required Comtech to provide within 7 days of Ms. Houserman's termination. Thus, she was relieved of that obligation.

5.7     As a direct and proximate result of Defendant Comtech's breaches of contract, Ms. Houserman has been damaged in an amount to be proved at trial and no less than $75,000.

## VI.    CAUSE OF ACTION TWO:
### VIOLATION OF RCW 49.52.050 and 49.52.070 AGAINST ALL DEFENDANTS

6.1     Plaintiff incorporates paragraphs 1.1-5.7 as if set forth herein.

6.2     RCW 49.52.050 prohibits any employer, officer, vice-principal, or managing agent from willfully withholding wages due to any employee.

6.3     The payments due to Ms. Houserman under the 2016 Comtech Agreement constitute wages within the meaning of RCW 49.52.050.

6.4     Defendants Mr. Kornberg and Mr. Porcelain are officers, vice-principals, or managing agents of Defendant Comtech within the meaning of RCW 49.52.050.  Mr. Kornberg and Mr. Porcelain had authority over the payment of the wages due to Ms. Houserman.

6.5     Defendants' willful withholding of the wages due to Ms. Houserman under the 2016 Comtech Agreement constitutes violations of RCW 49.52.050.

6.6     RCW 49.52.070 provides that the remedy for a violation of RCW 49.52.050 is payment of twice the wages wrongfully withheld.

COMPLAINT – 12

6.7     As a direct and proximate result of Defendants' violations of RCW 49.52.050, Ms. Houserman has been damaged in an amount to be proved at trial and no less than $75,000.

### VII.    CAUSE OF ACTION THREE:
### VIOLATION OF THE WASHINGTON LAW AGAINST DISCRIMINATION AGAINST ALL DEFENDANTS

7.1     Plaintiff incorporates paragraphs 1.1-6.7 as if set forth herein.

7.2     RCW 48.60.180(3) provides that it is an unfair practice for any employer to discriminate against any person in compensation or in other terms or conditions of employment because of sex.

7.3     During the time that Ms. Houserman was on maternity leave with her second child from April 27, 2016 – August 13, 2016, her call handling responsibilities were transferred by Comtech to a male co-worker, Jay Whitehurst.  Comtech's SST group had three main product sources: wireless/voip 911 services, 9-1-1 call routing and 9-1-1 call handling.

7.4     As a result of anticipated losses to the call handling section, in September 2016, Ms. Houserman agreed that her actual 2017 "pre-tax profit" achievement would be reduced by $6.297 million for the purposes of calculating the bonus achievement against the SST division's goals as set by the Executive Compensation Committee on her 2017 Goal Sheet, regardless of the actual pre-tax profit performance of the call handling division. The $6.297 million reduction was based upon an assumed loss to the call handling division projected for FY 2017.  Ms. Houserman expected the profits from her remaining product lines would offset the proposed $6.297 million reduction to her pre-tax profit.

7.5     This reduction was proposed in writing by Mr. Porcelain and specifically referenced the bonus treatment for FY 2017. Ms. Houserman agreed to a one-time reduction in her

COMPLAINT – 13

divisions' pre-tax profit for FY 2017 only.  Under the arrangement with Comtech, Jay Whitehurst would be given a credit if the call handling division's losses were less than $6.297 million.

7.6     In FY 2017, the call handling division suffered a less-substantial loss than anticipated, at approximately $3.0 million, meaning that Ms. Houserman suffered a reduction to her pre-tax profit, while Jay Whitehurst was given a credit towards <u>his</u> pre-tax profit goal for FY 2017.

7.7     Notwithstanding such reduced loss, in September 2017, Comtech officer Mr. Porcelain sent Ms. Houserman a Fiscal Year Goal Sheet for FY 2018 with the same reduction as in FY 2017 to Ms. Houserman's pre-tax profit achievement for the purposes of calculating her bonus, or $6.297 million.

7.8     On information and belief, the projected loss for FY 2018 for Comtech's call handling division was not projected to be $6.297 million, but more in the range of $2.5 million.

7.9     Comtech has provided no reasonable justification for reducing Ms. Houserman's pre-tax profit in the exact amount of $6.297 million for the FY 2018 Goal Sheet.

7.10     On information and belief, Ms. Houserman's co-worker Jay Whitehurst was given a credit towards his pre-tax profit goal in FY 2018 as a result of the call handling division having losses less than $6.297 million.

7.11     Ms. Houserman was the only female president at Comtech.

7.12     She was well-qualified for her position, and generated substantial revenues for Comtech and its predecessor, TSYS.

COMPLAINT – 14

7.13     Ms. Houserman closed more than $142 million in new business in FY 2018 alone, including a major contract with a wireless carrier that Comtech boasted was worth $134 million in a February 2018 press release.

7.14     On information and belief, similarly situated male-presidents of Comtech did not have the same level of reduction to their pre-tax profit achievement used for bonus calculation for FY 2018, or the same percentage of call-up from their projected pre-tax profit goal.

7.15     On information and belief, a male executive, Jay Whitehurst, directly benefited from the reduction of Ms. Houserman's pre-tax profit in FY 2017 and FY 2018, as he was given a credit towards his pre-tax profit in both years.

7.16     The reduction of her pre-tax profit of $6.297 million for FY 2018 had no legitimate business justification based upon the results obtained by the call handling division for FY 2017 and FY 2018.

7.17     The reasons Comtech gave for Ms. Houserman's termination, were merely pretextual for Comtech's discriminatory, gender-based acts.

7.18     For example, Comtech claims that Ms. Houserman violated Comtech's Standards of Business Conduct, Policy #08-01-11 (also known as Comtech's HR & Employee Compensation Guidelines) ("Policy #08-01-11").

7.19     Policy #08-01-11 requires presidents to accrue the proper amount of bonus related expenses.  Comtech required each of its presidents to calculate the amount of "non-equity incentive plan and bonus expense."

COMPLAINT – 15

7.20     When Ms. Houserman discovered what she thought was an error in the reduction to her profit before tax, she emailed Mr. Kornberg, on November 9, 2017, asking him for clarification as to the proper amount of the reduction to her pre-tax profit.

7.21     Mr. Kornberg did not timely respond to Ms. Houserman's inquiry about whether there was an error on her FY 2018 Goal sheet, to allow her to properly withhold the correct amount for bonuses.

7.22     It was not until February 13, 2018, that Mr. Porcelain finally informed Ms. Houserman that, in fact, she would be subject to the same $6.297 million in pre-tax profit reduction for FY 2018 that she was for FY 2017.

7.23     In each instance where Ms. Houserman directed the accrual of an amount for bonus expenses at the full amount, she was awaiting an answer from Mr. Kornberg as to the whether a $6.297 million reduction should be applied to her division's pre-tax profit for FY 2018.

## VII.     CAUSE OF ACTION FOUR:
### RETALIATION IN VIOLATION OF THE WASHINGTON LAW AGAINST DISCRIMINATION AGAINST ALL DEFENDANTS

8.1     Plaintiff incorporates paragraphs 1.1-7.23 as if set forth herein.

8.2     RCW 48.60.210 provides that it is an unfair practice for any employer to discriminate against any person because she has opposed any practices that are unlawful under the Washington Law Against Discrimination, Chapter 48.60 RCW.

8.3     RCW 48.60.180 provides that it is an unfair labor practice to discriminate against any person in compensation or in other terms or conditions of employment on the basis of sex.

8.4     Ms. Houserman engaged in activity protected under RCW 48.60.210 by complaining about Comtech's unfair treatment of her division's pre-tax profit goals on her 2018

COMPLAINT – 16

Goal Sheet and by participating in Comtech's investigation of her complaint of gender discrimination.

8.5      In February 2018, Ms. Houserman was informed that Comtech purportedly did not make an "error" in calculating the reduction to her pre-tax profit of $6.297 million.

8.6      Comtech's use of the $6.297 million reduction for FY 2018 was not justified by any the FY 2018 budget projection or past performance.

8.7      Ms. Houserman questioned why she was being unfairly singled out.  During a phone conversation Ms. Houserman had with Mr. Porcelain on February 13, 2018, after Ms. Houserman raised her concerns of disparate treatment, Mr. Porcelain threatened her about pressing the issue to Comtech's Board of Directors, telling her to "be careful what she wished for."

8.8      He also threatened her that Comtech could claw back a portion of an earlier bonus that was given to her.  He claimed that TSYS had given Comtech "inaccurate" numbers for calculating Ms. Houserman's bonus for FY 2015.

8.9      On March 19, 2018, Mr. Kornberg notified Ms. Houserman that Comtech had appointed an outside attorney, Ms. Nicole Eichberger, of Proskauer Rose LLP, to "investigate" Ms. Houserman's concerns.

8.10     Ms. Eichberger met with Ms. Houserman twice between March 21-March 23, 2018 to discuss the reductions to Ms. Houserman's Fiscal Year Goal Sheet for FY 2018.

8.11     However, it became clear that Ms. Eichberger was retained not to investigate Ms. Houserman's concerns about disparate treatment, but to find a pretext for terminating Ms. Houserman.

COMPLAINT – 17

8.12    For example, Ms. Eichberger questioned Ms. Houserman about the direction she gave to accounting to accrue for the full bonus expenses without the $6.297M reduction.  During this interview, Ms. Houserman asked Ms. Eichberger the relevance of her accounting decisions to the discrimination and retaliation investigation Ms. Eichberger was undertaking.

8.13    Ms. Houserman was terminated within hours, on April 2, 2018, after Ms. Eichberger read Ms. Houserman the results of her investigation.

8.14    Ms. Eichberger concluded as a result of her investigation that (1) the $6.297 million reduction to Ms. Houserman's pre-tax profit was related to the transfer of the call handling division from Ms. Houserman to Jay Whitehurst, and (2) critically, that it was the company's intent that this reduction to her "pre-tax profit" would continue for 5 years and that the common treatment from 2017 to 2018 meant that there was no discrimination.

8.15    In addition, based on information and belief, Comtech directed its subsidiary TSYS to file its unfounded claims against Ms. Houserman as further retaliation.

8.16    Because Ms. Houserman's protected activity was a substantial factor in Defendants' decision to terminate Ms. Houserman's employment and Defendants' decision to cause TSYS to file a lawsuit against Ms. Houserman, Defendants violated RCW 48.60.210.

8.17    As a direct and proximate result of Defendants' violation of RCW 48.60.210, Ms. Houserman has been damaged in an amount to be proved at trial and that is no less than $75,000.

## IX.    REQUEST FOR RELIEF

Based upon the foregoing, Plaintiff requests the following relief:

A.    An award of damages including, but not limited to, lost wages, including front pay, lost discretionary bonus, lost medical, pension, and retirement benefits; and other lost

COMPLAINT – 18

1  employment benefits in an amount to be proved at trial and that is no less than $75,000;

2       B.     Double damages for lost wages, which includes, without limitation, the "Pro-Rata

3  Retention Bonus" under the 2016 Comtech Agreement, pursuant to RCW 49.52.070;

4       C.     Reasonable attorney's fees and costs pursuant to RCW 49.48.030 and otherwise

5  available at law;

6

7       D.     Pre- and post-judgment interest at the maximum rate allowed by law;

8       E.     Such other and further relief as the Court deems just and proper.

9

     DATED this 1st day of May, 2019.

10

11       **CALFO EAKES & OSTROVSKY PLLC**

12  By:   *s/Angelo J. Calfo*

13  By:   *s/Gabriel Reilly-Bates*

14       Angelo J. Calfo, WSBA #27079
     Gabriel Reilly-Bates, WSBA# 52257

15       1301 Second Avenue, Suite 2800
     Seattle, WA  98101

16       (206) 407-2200 | Phone

17       (206) 407-2224 | Fax
     Email:  angeloc@calfoeakes.com

18                 gaber@calfoeakes.com

19       *Attorneys for Plaintiff Lynne Houserman*

20

21

22

23

24

25

26

COMPLAINT – 19

# EXHIBIT A



February 11, 2016

Via Electronic Mail

Lynne Houserman

Dear Lynne,

Comtech Telecommunications Corp. (the "Company") is pleased to offer you the position of President of Comtech's Safety and Security Technologies Group with a start date that coincides with the close of the acquisition of TeleCommunication Systems, Inc. (TCS) (the "Closing"). You will report directly to Dr. Stanton Sloane, Chief Executive Officer and President of the Company, and will work closely with our subsidiary/group presidents, our CFO as well other corporate staff.  This offer is subject to and conditioned upon the occurrence of the Closing and will be void *ab initio* and of no force or effect if the Closing does not occur by March 22, 2016.

Comtech uses a "pay-for-performance" policy to allocate between long-term and short-term compensation, and between cash and non-cash compensation components. The sum of these compensation elements determines Total Direct Compensation (TDC) which is reviewed and approved each fiscal year by the Executive Compensation Committee (ECC) of our Board of Directors.

Your total annualized direct compensation target for fiscal 2017 will be ███████ and will be pro-rated for the "Stub-Period" (the period between the Closing and July 31, 2016). Your targeted TDC consists of:



         of annual base salary
         of targeted annual bonus
         of 5 year stock options
         of 3 year long-term performance-based restricted stock units
         = Total Direct Compensation

You will be eligible for a base salary increase, effective August 1, 2017, in accordance with our normal annual salary review. The actual amount of bonus is based on your personal performance and the financial performance of your business group and will be pro-rated for the fiscal year ending July 31, 2016 based on your actual start date. Bonus goals are based on business group targets for pre-tax profit, new orders (funded bookings) and "free" cash flow (cash generated from business group results less business group capital expenditures). In addition, there will be five personal goals. Specific goals for fiscal 2016 and fiscal 2017 will be mutually agreed upon with the CEO and documented on a "Goal-Sheet".

Payment of this bonus is conditioned upon your continued active employment through the payment date of our fiscal year bonuses, which for 2016 is expected to occur no later than October 15, 2016. It also requires that you comply with our Standards of Business Conduct and other Company policies and execute a Bonus Acknowledgement form.

- 1 -

The three year long term performance-based restricted stock unit grant is based on 3 year revenue and EBITDA goals that we will establish for your business unit and which are reviewed and approved by our Executive Compensation Committee. The goals for these performance shares will largely be based on the TCS projections provided to us and adjusted for changes in the business organization as a result of the acquisition. Once the transaction closes and the goals are finalized, the Stub-Period grant is expected to be approved at the next Board of Directors meeting which is currently scheduled for March. The fiscal 2017 grant is generally issued at our August Board of Director's meeting. Each grant is documented in a written agreement.

Stock option grants are expected to have a maximum ten-year contract life, an exercise price equal to the fair market value of Company stock on the date of grant and vest 20% per year over 5 years. The number of options actually awarded is based on your targeted dollar amount (pro-rated for the Stub-Period) which is then converted into options based on the grant-date fair value using the Black-Scholes pricing model.

In addition to the foregoing compensation arrangements, you will be eligible to receive a retention bonus (the "Retention Bonus") of up to one year's base salary (at the rate then in effect), subject to your continued employment with the Company through the third anniversary of the Closing. The Retention Bonus will be paid in a lump sum on the 60th day following the third anniversary of the Closing. Notwithstanding the foregoing, in the event that your employment is terminated by the Company without Cause (as defined below) or you die (each a "Qualifying Termination") on or prior to the third anniversary of the Closing, you will be eligible to receive a pro-rated portion of the Retention Bonus (the "Pro-Rata Retention Bonus"). The amount of the Pro-Rata Retention Bonus will be equal to the greater of (x) one-third of your then-current base salary and (y) the amount determined by multiplying your then current base salary by a fraction, the numerator of which is the number of months between the Closing and your Qualifying Termination and the denominator of which is 36. The Pro-Rata Retention Bonus will only be payable following your termination by the Company without Cause if you deliver and do not revoke a general release of claims in favor of the Company (the "Release"). The Company will deliver the Release to you within seven days of your termination, and the Release must be executed and delivered (and no longer subject to revocation, if applicable) within 60 days following such termination. The Pro-Rata Retention Bonus will be paid in a lump sum on the 60th day following your Qualifying Termination. For purposes of this letter agreement, "Cause" shall mean: (A) your willful misconduct (including a failure to act), willful neglect, willful malfeasance, or gross negligence in carrying out your duties hereunder, or "willful breach" of this letter agreement (other than an inadvertent or nonrecurring breach cured and corrected by you within 30 days after notice thereof by the Company). Under this provision, "willful breach" shall include, but not be limited to, insubordination, serious dereliction of fiduciary obligation, chronic abuse by you of alcohol or narcotics, a violation of any material Company rule, regulation or policy, or a serious violation of any law governing the workplace. It is provided further that no act or failure to act shall be considered "willful" if you reasonably believed in good faith that such act or failure to act was in the best interests of the Company and its affiliates; (B) any act or conduct of dishonesty to the Company by you involving fraud and embezzlement; or (C) your conviction, including a plea of guilty or *nolo contendere*, of a felony involving theft or moral turpitude, other than a felony predicated on your vicarious liability (for purposes of this letter agreement, "vicarious liability" means your liability based on acts of the Company for which you are charged solely

- 2 -

as a result of your offices with the Company and in which you were not directly involved or did not have prior knowledge of such acts).

You will be reimbursed for business expenses incurred in connection with your employment pursuant to our Company-Wide Travel & Business Expense Guidelines.

Based on current Company policy, you will be eligible:

- ° to accrue four weeks of vacation per year;
- ° to accrue 5 personal days each calendar year;
- ° to accrue 5 sick days each calendar year;
- ° for 10 paid holidays, as defined by the Company;
- ° to participate in Comtech's 401(k) plan; and
- ° to participate in the Company's health and life insurance benefits

Attached are sample "Goal Sheets" and forms of agreements for your reference. Company policies are subject to change in the future. In addition, as a condition to this offer, you must execute the Company's standard form of confidentiality and invention assignments agreement, a copy of which is attached hereto.

Any amounts paid pursuant to this letter agreement will be subject to recoupment in accordance with any claw-back policy that the Company has adopted, adopts or is otherwise required by law in the future to adopt.

By signing below, you represent and warrant that you are not bound by any agreement, understanding or restriction (including, but not limited to any covenant restricting competition or agreement related to the confidential and proprietary information and trade secrets of any third party), that is inconsistent with or prevents or limits your ability to fulfill your obligations to the Company.

Please indicate your acceptance of our offer by signing below and return to me as soon as possible. Please feel free to call me with any questions.

Best regards,

Dr. Stanton Sloane
Chief Executive Officer and President
Comtech Telecommunications Corp.

Accepted: L Houserman                               2/27/2016
                                                            Date

9912/21989-121 current/54354687v5

- 3 -