THE HONORABLE RICHARD A. JONES

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LYNNE HOUSERMAN,

    Plaintiff,

v.

COMTECH TELECOMMUNICATIONS CORPORATION, FRED KORNBERG, AND MICHAEL D. PORCELAIN,

    Defendants.

Case No. 2:19-cv-00644-RAJ

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO EXCLUDE LYNNE HOUSERMAN'S PROFFERED EXPERT GARY B. GOOLSBY

**Noted on Motion Calendar:**
**November 20, 2020**

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO EXCLUDE LYNNE HOUSERMAN'S PROFFERED EXPERT GARY B. GOOLSBY
(CASE NO. 2:19-cv-00644-RAJ)

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200   FAX, (206) 407-2224

Gary B. Goolsby's expert report includes a detailed description of the auditing and accounting principles he applied when reviewing the evidence in this case, with citations to specific accounting authorities, including the Internal Control – Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission ("COSO") and the Financial Accounting Standards Board's codification of U.S. Generally Accepted Accounting Principles ("GAAP").  Comtech's motion to exclude Mr. Goolsby's testimony does not contest the reliability or applicability of any of these principles or authorities—in fact, its motion fails to mention them at all, treating them as if they did not exist and as if Mr. Goolsby had not described them in detail in his report.  Instead, Comtech's motion relies on vague, superficial objections to the reliability of Mr. Goolsby's methodology and to the relevance of selectively quoted portions of his report.  But Mr. Goolsby's methodology—reviewing the evidence and applying auditing standards, accounting principles, and his decades of relevant experience—has been found by numerous courts to be sufficiently reliable for purposes of Rule 702 and *Daubert*, and is indeed the same methodology that the expert retained by Comtech used to form her opinions.  And Mr. Goolsby's opinions are plainly relevant, as one of Comtech's primary defenses in this case is that Ms. Houserman violated the very same internal-control and accounting standards that Mr. Goolsby would testify about.  Ultimately, Comtech's motion is a futile attempt to leave Ms. Houserman without an expert on one of the central issues in this case, and it should be denied in its entirety.

## I.   BACKGROUND

### A.   The underlying dispute involves auditing and accounting issues.

Ms. Houserman is the former president of Comtech's Safety and Security Technologies ("SST") group.  Dkt. 76 ¶ 2.1.  In November 2017, the finance director for the SST group brought to her attention that Comtech appeared to have applied a $6.297 million reduction to the SST group's pre-tax profits for purposes of calculating whether the group met its achievement goals and would receive a bonus (the "Bonus Reduction").  *Id.* ¶ 4.16.  The Bonus Reduction made it

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
TO EXCLUDE LYNNE HOUSERMAN'S PROFFERED
EXPERT GARY B. GOOLSBY
(CASE NO. 2:19-cv-00644-RAJ) - 1

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200   FAX, (206) 407-2224

more difficult for SST to achieve its goals, which, in turn, made it less likely that employees in the group would receive a full (or any) year-end bonus. *See id.* Ms. Houserman believed that the Bonus Reduction—which applied only to her group—was an error, because there was no reasonable explanation for it. *Id.* ¶¶ 4.16–4.17. She wrote to Comtech's CEO, Fred Kornberg, alerting him to the error and asking him to correct it. *Id.* ¶ 4.18. Instead of resolving the issue, however, Mr. Kornberg left Ms. Houserman without an answer for the next three months, despite Ms. Houserman repeatedly bringing the error to his attention through emails and her group's quarterly sub-certifications relating to the Sarbanes-Oxley Act of 2002 ("SOX"). *Id.* ¶¶ 4.18–4.19. While waiting for Mr. Kornberg to correct the error, the SST group had to decide how to accrue (set aside funds) for the bonuses that it would pay out at year-end. *See id.* Because Ms. Houserman and her finance director believed that the Bonus Reduction was an error, they accrued in November and December 2017 and January 2018 as if the Bonus Reduction would be removed. *See id.*

On February 13, 2018—more than three months after Ms. Houserman had first raised the issue—the CFO of Comtech, Michael Porcelain, informed Ms. Houserman for the first time that Comtech had decided that the Bonus Reduction was not an error. *Id.* ¶ 4.20. Ms. Houserman responded by explaining that Comtech was treating her unfairly and differently from her male counterparts, none of whose groups were facing any reduction to their profit figures (let alone a reduction of the magnitude imposed on Ms. Houserman's group). *See id.* ¶ 4.24. Less than two months later, Ms. Houserman was fired "for cause." *See id.* ¶¶ 8.13, 9.4. As justification, Comtech cited the instruction she had given to her finance director to accrue in November, December, and January as if the Bonus Reduction would be removed. *See id.* ¶ 4.30. Comtech asserted that this instruction overrode the company's internal controls over financial reporting, amounted to a "significant deficiency in the Company's compliance with the internal control over financial reporting requirements under [SOX]", and created a "tone-at-the-top" issue for the SST business. Dkt. 78 at 39. Comtech's external auditor, Deloitte, purportedly concurred with Comtech's

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
TO EXCLUDE LYNNE HOUSERMAN'S PROFFERED
EXPERT GARY B. GOOLSBY
(CASE NO. 2:19-cv-00644-RAJ) - 2

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200   FAX, (206) 407-2224

findings (based on an incomplete understanding of the circumstances), and an attorney-investigator named Nicole Eichberger, who worked for Comtech's general outside law firm, similarly agreed with Comtech's version of events. See Dkt. 76 ¶¶ 8.9–8.15.

Ms. Houserman is now suing Comtech for breach of contract, unlawful wage withholding, discrimination, retaliation, and wrongful discharge in violation of public policy—specifically the public policy that requires financial statements of public companies to be accurate pursuant to SOX. *See generally* Dkt. 76. Comtech has asserted several affirmative defenses, including that it had a "legitimate, lawful, non-discriminatory reason[]" to terminate Ms. Houserman because her conduct had "constituted a significant deficiency in Comtech's compliance with the internal control over financial reporting requirements under [SOX]." *See* Dkt. 78 at 33.

**B.  Mr. Goolsby offers expert opinions on the relevant auditing and accounting issues.**

Gary B. Goolsby is a Certified Public Accountant ("CPA") with over 46 years of experience applying auditing, internal-control, and accounting standards, including as an audit and leadership partner at one of the major auditing firms. Silverman Decl., Ex. A ("Goolsby Report") ¶¶ 3–8. He has been retained by Ms. Houserman to offer expert testimony about whether her conduct was consistent with internal-control and accounting standards, and whether Comtech and its auditors correctly concluded that her conduct amounted to a significant deficiency and a tone-at-the-top issue under auditing standards. *Id.* ¶ 2. On August 14, 2020, Mr. Goolsby produced a report detailing his opinions on these issues. *See generally id.*

Mr. Goolsby's report begins by explaining that the accepted criteria for evaluating whether corporations have adequate internal control over financial reporting as required by SOX is the "COSO" framework. *Id.* ¶¶ 36, 38. He describes that framework in detail in his report, explaining the objectives of the framework and the key attributes of internal controls. *Id.* ¶¶ 36–37. He also explains the key concepts for complying with the COSO framework: (1) ensuring an effective control environment, including through a proper "tone at the top" from management; (2) being

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
TO EXCLUDE LYNNE HOUSERMAN'S PROFFERED
EXPERT GARY B. GOOLSBY
(CASE NO. 2:19-cv-00644-RAJ) - 3

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200   FAX, (206) 407-2224

able to effectively identify, analyze, and manage risks; (3) ensuring that control activities in the organization are effectively executed; (4) ensuring effective communication on issues relating to operations finance and compliance; and (5) ensuring effective monitoring of potential weaknesses in controls, such that identified issues are being reported to higher levels of authority and resolved on a timely basis. *Id.* ¶¶ 40–45 (citing COSO's Internal Control – Integrated Framework).

Mr. Goolsby then describes the three categories of weaknesses in internal controls, as defined by the American Institute of Certified Public Accountants: (1) *deficiencies*, which "exist[] when the design or operation of a control does not allow management or employees . . . to prevent, or detect and correct, misstatements [in financial reporting] on a timely basis;" (2) *material weaknesses*, which are deficiencies with a reasonable possibility of resulting in a material financial misstatement; and (3) *significant deficiencies*, which are deficiencies that are less severe than material weaknesses but are "important enough to merit attention by those charged with governance." *Id.* ¶¶ 46–49 (citing AU-C Section 265.06–.07).

Next, Mr. Goolsby explains that the objective of internal control over financial reporting is to ensure that financial statements are in accordance with GAAP. He explains that under GAAP, some future expenses, like bonus payments, must be accrued throughout the course of the year, based upon estimates and assumptions about the ultimate expense to the company. *Id.* ¶ 51. When making those estimates, Mr. Goolsby explains, a company must endeavor to ensure that its financial statements are complete and accurate, meaning that bonuses and other expenses should not be recorded based on erroneous information or flawed assumptions. *Id.* ¶ 53.

After explaining these auditing, internal-control, and accounting principles, Mr. Goolsby then uses his extensive experience to apply these principles to the evidence he has reviewed in this case. In his report, he lists the more than 400 documents that he reviewed, cites to the specific documents he found to be relevant to his inquiry, and explains how those documents inform his analysis. He explains that, in his opinion, Ms. Houserman's conduct in raising her concerns about

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
TO EXCLUDE LYNNE HOUSERMAN'S PROFFERED
EXPERT GARY B. GOOLSBY
(CASE NO. 2:19-cv-00644-RAJ) - 4

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200   FAX, (206) 407-2224

the Bonus Reduction—which, if it were an error, could have caused a misstatement—was consistent with the principles underlying internal controls, which are designed to ensure that management and employees can "prevent, or detect and correct, misstatements on a timely basis." *See id.* ¶¶ 47, 67. Her conduct was also consistent with the COSO principle of ensuring effective communication about operations and finance issues. *See id.* ¶¶ 44, 67. Ms. Houserman's disclosures about the erroneous Bonus Reduction in her group's SOX sub-certifications, Mr. Goolsby further explains, were consistent with the purpose of those sub-certifications under SOX. *See id.* ¶¶ 85–86. And her instruction not to include the Bonus Reduction in the accrual was consistent with GAAP's requirement that future expenses not be recorded using "amounts believed to be erroneous or based on flawed assumptions." *Id.* ¶ 53; *see also* ¶ 104.

Because Ms. Houserman's conduct was consistent with the principles of both the COSO framework for internal controls and GAAP accounting standards, Mr. Goolsby concludes that Ms. Houserman's conduct did not amount to a weakness in internal controls over financial accounting. *See id.* ¶¶ 79–80. Also, as Mr. Goolsby explains in his report, based on his extensive experience as an auditor, Ms. Houserman's conduct did not include any of the characteristics that would typically give rise to a significant deficiency or tone-at-the-top issue, and he therefore concludes that Comtech and its auditors (who were not provided with all appropriate facts about the matter) incorrectly determined that Ms. Houserman's conduct amounted to a significant deficiency or tone-at-the-top issue. *See id.* ¶¶ 17, 80, 95, 114.

## II. ARGUMENT

Federal Rule of Evidence 702 allows opinion testimony from experts—qualified by knowledge and experience—to "help the trier of fact to understand the evidence or to determine a fact in issue." The Court has a "basic gatekeeping obligation" under Rule 702 to ensure that expert opinions are relevant and reliable enough for consideration by the trier of fact. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). This gatekeeping role is a limited one; expert testimony

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
TO EXCLUDE LYNNE HOUSERMAN'S PROFFERED
EXPERT GARY B. GOOLSBY
(CASE NO. 2:19-cv-00644-RAJ) - 5

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200   FAX, (206) 407-2224

is liberally admitted under the Federal Rules and "rejection of expert testimony is the exception rather than the rule." *S.E.C. v. Retail Pro, Inc.*, No. 08CV1620, 2011 WL 589828, at *4 (S.D. Cal. Feb. 10, 2011) (quoting Fed R. Evid. 702 advisory committee's note to 2000 amendment).

Mr. Goolsby's opinions easily meet the threshold for admissibility under Rule 702. His extensive experience as an auditor and accountant qualifies him as an expert in auditing, internal controls, and accounting, and his opinions regarding whether Ms. Houserman complied with internal-control and accounting standards are reliable and relevant to the issues in this case.

### A. Mr. Goolsby is qualified as an expert in auditing, internal controls, and accounting.

Rule 702 permits testimony from witnesses "qualified as an expert by knowledge, skill, experience, training, or education." Mr. Goolsby plainly meets that standard with respect to auditing, internal controls, and accounting. Mr. Goolsby has over 46 years of auditing, internal-control, and accounting experience, including as an audit and leadership partner at one of the major accounting firms for 18 years. Goolsby Report ¶¶ 3–8, App. 1. He has signed audit opinions, consulted on a wide range of accounting and auditing issues including internal controls over financial reporting, assisted with enhancements to audit methodology for a wide range of businesses, and conducted auditing training sessions, among other relevant experience described in his report. *Id.*

Comtech does not appear to contest Mr. Goolsby's qualifications in auditing, internal controls, and accounting, but does object to his report's references to "governance," arguing that he lacks expertise in matters of corporate governance. Mot. to Exclude, Dkt. 112, ("Mot.") 15–16. But Mr. Goolsby does, in fact, have extensive experience relating to governance, including as an auditor for major corporations, leadership partner at a major accounting firm, and CPA, *see* Goolsby Report App. 1, which qualifies him to offer testimony on governance. *Cf. Drebing v. Provo Grp., Inc.*, 519 F. Supp. 2d 811, 816 (N.D. Ill. 2007) (finding CPA "qualified to review

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
TO EXCLUDE LYNNE HOUSERMAN'S PROFFERED
EXPERT GARY B. GOOLSBY
(CASE NO. 2:19-cv-00644-RAJ) - 6

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200   FAX, (206) 407-2224

corporate records and financial documents and draw conclusions about corporate governance from them"). And, besides, the term "governance," as used in Mr. Goolsby's report, plainly relates to the aspects of governance related to internal controls and proper financial accounting, which are unquestionably within his knowledge and experience as an auditor and accountant.[1] *See, e.g.*, Goolsby Report ¶ 95 ("Kornberg's and Porcelain's conduct fails the test of strong governance internal controls inherent in the COSO guidelines . . . .").

### B. Mr. Goolsby's opinions are reliably based on widely accepted audit and accounting principles and his extensive experience applying those principles.

Mr. Goolsby's principles and methods are easily reliable enough to satisfy Rule 702. The Court's reliability inquiry under Rule 702 is a limited one; the Court is "supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). In a non-scientific field like auditing, "reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004); *see also Cypress Ins. Co. v. SK Hynix Am., Inc.*, No. 2:17-CV-00467-RAJ, 2019 WL 634684, at *3 (W.D. Wash. Feb. 14, 2019) (Jones, J.) ("The fact that Dykstra's opinions are based only on his knowledge or experience is not enough to disqualify him as an expert."). For instance, a non-scientific expert's methodology can be reliable even if it involves simply the "application of extensive experience" to analyze the case record. *See* Fed. R. Evid. 702 advisory committee's note to 2000 amendment; *Geiger v. Creative Impact Inc.*, No. CV-18-01443, 2020 WL 3268675, at *6 (D. Ariz. June 17, 2020) ("[T]he

---

[1] Comtech questions—without directly challenging—Mr. Goolsby's expertise in SOX, noting that he has spent 13 of the 18 years since SOX was enacted as a consultant. *See* Mot. 3. Even setting aside Mr. Goolsby's ample experience with SOX as both an auditor and as a consultant, Mr. Goolsby's unquestionable expertise in the COSO framework qualifies him to testify about SOX because the COSO framework is used to assess whether a company's internal controls comply with SOX. Goolsby Report ¶ 38 (citing SEC Release No. Rel. T. 33-8238.II.A–B); *see also* Silverman Decl. Ex. B. (Lehnert Report) ¶¶ 36–37 (acknowledging role of COSO in SOX compliance).

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
TO EXCLUDE LYNNE HOUSERMAN'S PROFFERED
EXPERT GARY B. GOOLSBY
(CASE NO. 2:19-cv-00644-RAJ) - 7

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200   FAX, (206) 407-2224

application of extensive experience,' . . . satisfies Rule 702(c)'s requirement that an expert opinion be based upon reliable principles and methods.").

Here, the principles relied upon by Mr. Goolsby and his methodology of applying those principles to the case record is sufficiently reliable under Rule 702. Mr. Goolsby has extensive expertise in the principles of the COSO framework and GAAP, which he describes in detail at the outset of his report. His report also explains in detail how he has applied those principles to the record in this case: He lists the over 400 documents that he reviewed; includes over 120 citations throughout his report to the specific materials that he is relying on to reach his conclusions; and describes in detail why he reaches the conclusions that he does. This methodology is consistent with expert testimony that has been recognized as reliable in other cases. *See, e.g.*, *S.E.C. v. Johnson*, 525 F. Supp. 2d 70, 75 (D.D.C. 2007) ("[R]eliance upon GAAP and other industry standards constitutes the type of non-scientific, but admissible, expert methodology envisioned in *Kumho*."); *S.E.C. v. Leslie*, No. C 07-3444, 2010 WL 2991038, at *7 (N.D. Cal. July 29, 2010) (finding expert testimony reliable in which expert discusses GAAP and then applies GAAP to record); *In re Novatel Wireless Sec. Litig.*, No. 08CV1689, 2011 WL 5827198, at *9 (S.D. Cal. Nov. 17, 2011) (similar); *United States v. Casher*, No. CR 19-65, 2020 WL 977997, at *3 (D. Mont. Feb. 28, 2020) (similar). Indeed, his principles and methods are the same as those applied by Comtech's rebuttal expert, Elaine Lehnert, who also begins her report with a discussion of the COSO framework and then applies that framework to the case record. *See, e.g.*, Silverman Decl., Ex. B (Lehnert Report) ¶ 69 ("[B]ased on my review of the materials . . . Ms. Houserman overrode Comtech's internal controls and Comtech's policies and procedures which constituted at a minimum a significant deficiency . . . under the SEC's ICFR requirements and COSO."). And during her deposition, Ms. Lehnert acknowledged that "us[ing] the COSO framework" and "assess[ing] the documentation that was provided to make [a] determination" about compliance with COSO is a reliable methodology. Silverman Decl., Ex. C ("Lehnert Deposition") 21:1–

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
TO EXCLUDE LYNNE HOUSERMAN'S PROFFERED
EXPERT GARY B. GOOLSBY
(CASE NO. 2:19-cv-00644-RAJ) - 8

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200   FAX, (206) 407-2224

22:21;[2] *cf. Cypress Ins. Co.*, 2019 WL 634684, at *3 (Jones, J.) (explaining that "reliability is based in part on whether [an expert's] preparation is of the kind that others in the field would recognize as acceptable" (construing *Kumho Tire*, 526 U.S. at 151)).

In fact, Mr. Goolsby's principles and methods are so widely accepted that even the cases relied upon by Comtech *support* the reliability of Mr. Goolsby's proffered testimony. In *Erhart v. BofI Holding, Inc.*, for example, although the court did not allow expert testimony on whether the plaintiff's allegations were generally "supported by evidence," the court *did* allow expert testimony on almost precisely what Mr. Goolsby would testify about here: whether, "based on [the expert's] review of the evidence," the plaintiff "appeared to deviate from auditing practices." 445 F. Supp. 3d 831, 849 (S.D. Cal. 2020). Similarly, in *In re Longtop Financial Technologies Ltd. Securities Litigation*, the court did not allow the auditing expert to merely summarize and rely upon the work of other auditors—which is not what Mr. Goolsby, who has analyzed the evidence himself and developed his own independent opinions, would do here—but did allow the auditing expert to "evaluate the operations of Longtop's finance department *based upon his own review of the relevant documents*." 32 F. Supp. 3d 453, 463 (S.D.N.Y. 2014) (emphasis added). Mr. Goolsby, similarly, would testify about his evaluation of Comtech's internal-control and accounting operations based on his review of the relevant documents. The expert in *Longtop* was also permitted to testify based on his experience about "how common it is for a company to have weaknesses in its internal controls." *Id.* Mr. Goolsby, similarly, would testify that it was "highly unusual . . . that over a four-year period there was not one Deficiency characterized as a Significant Deficiency until this alleged aberration occurred." *See* Goolsby Report ¶ 112. Such testimony is well within Mr. Goolsby's wheelhouse of expertise and more than complies with the standards for

---

[2] *See also* Lehnert Deposition 33:4 ("I use the COSO framework"), 35:13–15 (acknowledging external auditors also use COSO framework), 39:4–5 (acknowledging that for external auditors "[t]he process is that you look at the documentation supporting"), 114:17–20 (explaining that significant deficiency determination is "based on the facts of the situation and – and judgment").

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
TO EXCLUDE LYNNE HOUSERMAN'S PROFFERED
EXPERT GARY B. GOOLSBY
(CASE NO. 2:19-cv-00644-RAJ) - 9

LAW OFFICES
CALFO EAKES LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200   FAX, (206) 407-2224

reliability under Rule 702.[3]

**C.  Mr. Goolsby's opinions are relevant to the issues in this case.**

Expert testimony is sufficiently relevant under Rule 702 if it "has a valid connection to the pertinent inquiry." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010).  Here, whether Ms. Houserman's conduct was consistent with internal controls and accounting principles is a pertinent inquiry—indeed, it is central to Comtech's defense in this case—and Comtech does not appear to challenge the overall relevance of Mr. Goolsby's opinions on these topics.  Comtech does, however, bring scattershot objections to the relevancy of selectively quoted portions of Mr. Goolsby's report.  None of those objections have merit.

Comtech asserts, for one, that it is irrelevant whether its senior executives complied with internal controls or created a tone-at-the-top issue.  But whether others at Comtech violated internal controls is relevant to determining whether Comtech's termination of Ms. Houserman for, purportedly, that same conduct was pretextual.  *See Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1114 (9th Cir. 2011) (evidence that others engaged in same conduct for which plaintiff was terminated "raises a triable issue of pretext").  And even setting that aside, understanding the control environment at Comtech is relevant to assessing Ms. Houserman's conduct.  As Mr. Goolsby explains, it was senior management's poor tone at the top that put Ms. Houserman in the position of having to decide how to accrue for the SST group's bonuses based on incomplete information  *See* Goolsby Report ¶ 95.[4]  Comtech might disagree with that assessment, but that is

---

[3] Comtech is correct that Mr. Goolsby's opinions, though informed by his review of Comtech's policies, focus primarily on auditing and accounting principles rather than Comtech's policies.  Comtech is incorrect, however, that a company's policies and procedures are categorically off limits for expert testimony. *See, e.g. United States v. Pac. Gas & Elec. Co.*, No. 14-CR-00175, 2016 WL 1640462, at *3 (N.D. Cal. Apr. 26, 2016) (allowing expert testimony "to assist the jury in understanding PG&E's financial policies and practices.").  In fact, Comtech's rebuttal expert acknowledged in her deposition that whether Ms. Houserman violated Comtech's policies was "part of [her] opinion in this case" and said she could form a reliable opinion on that topic.  *See* Lehnert Deposition 70:5–25.

[4] Comtech's expert, Ms. Lehnert, also agreed during her deposition that evaluating the tone at the top of a company is "absolutely" an "important element" of what an auditor does, Lehnert Deposition 38:3–16, and that the "integrity and honesty and ethics of senior management" and the diligence of senior management on compensation issues can be relevant to a tone-at-the-top determination, *id.* 98:20–101:10.

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
TO EXCLUDE LYNNE HOUSERMAN'S PROFFERED
EXPERT GARY B. GOOLSBY
(CASE NO. 2:19-cv-00644-RAJ) - 10

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200   FAX, (206) 407-2224

a question for the trier of fact, not for this Court at the *Daubert* stage.

Comtech also objects to Mr. Goolsby noting the apparent illogic of the Bonus Reduction. But GAAP instructs not to accrue based on flawed assumptions, so whether the Bonus Reduction relied on flawed assumptions is centrally relevant to whether Ms. Houserman appropriately decided under GAAP not to accrue based on the Bonus Reduction. *See* Goolsby Report ¶ 53.

Comtech argues that Mr. Goolsby improperly opines on whether Ms. Houserman's conduct was "'willful' within the meaning of the employment agreement," Mot. 12, but that mischaracterizes Mr. Goolsby's opinions. Although Mr. Goolsby mentions the agreement's willfulness term, he does not opine on it, offering instead only his "conclusion that Houserman adhered to internal controls to achieve proper GAAP accounting." Goolsby Report ¶ 89.

Comtech also objects to Mr. Goolsby's opinions as to the audit findings of Deloitte, Comtech's external auditing firm. But determining whether Comtech and its auditing firm, Deloitte, correctly concluded that Ms. Houserman's conduct violated internal controls is precisely the task at hand. And whether Deloitte was provided with the relevant information to adequately investigate the issue is relevant to assessing whether Deloitte's conclusions are reliable. Mr. Goolsby, with his extensive experience working for and evaluating auditing firms, is more than qualified to opine on that issue. *See, e.g.*, *Erhart*, 445 F. Supp. 3d at 850 (allowing auditing expert to testify as to "alleged lack of independence in conducting . . . audits").

Finally, Comtech objects to Mr. Goolsby's discussion of the workplace investigation conducted by Nicole Eichberger, but, here, again, discussion of that investigation is certainly relevant. That investigation, which Comtech has relied upon in its defense, *see, e.g.*, Dkt. 111 at 23:8–9, focused in large part on whether Ms. Houserman acted appropriately with respect to the accrual issue, *see* Dkt. 113-26 at 10. Mr. Goolsby's opinion that Ms. Eichberger failed to properly apply auditing, internal-control, and accounting standards, therefore, is plainly relevant to the jury's task of determining how much, if any, weight to afford her findings.

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
TO EXCLUDE LYNNE HOUSERMAN'S PROFFERED
EXPERT GARY B. GOOLSBY
(CASE NO. 2:19-cv-00644-RAJ) - 11

LAW OFFICES
CALFO EAKES LLP
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200   FAX, (206) 407-2224

**D. Mr. Goolsby's opinions do not usurp the role of the jury and are not inadmissible under Rule 403.**

Comtech also argues that Mr. Goolsby's testimony on auditing and accounting standards would usurp the role of the factfinder by offering opinions on topics within the common knowledge of a jury. But accounting and auditing standards under GAAP and COSO are not common knowledge, as multiple courts have recognized. *See, e.g.*, *Erhart*, 445 F. Supp. 3d at 844 ("The objectives and standards for internal audit systems are not matters of common knowledge . . . ."); *Retail Pro*, 2011 WL 589828, at *4 ("Evidence regarding GAAP and revenue recognition is a proper basis of expert testimony."). Mr. Goolsby's testimony about whether Ms. Houserman's conduct was consistent with those standards is likewise well within the province of an expert with specialized knowledge of those standards. *See, e.g.*, *Hangarter*, 373 F.3d at 1016–17 (expert testimony that defendants departed from "insurance industry norms" did not improperly usurp role of jury). And to the extent that Comtech's objections are based on Mr. Goolsby's supposedly "slanted" account of the evidence (*see* Mot. 2, 7, 10), that goes to weight, not admissibility, and can be tested through cross-examination. *United States v. Finley*, 301 F.3d 1000, 1014 (9th Cir. 2002) ("[T]he subjectivity of [the expert's] conclusions and his reliance on the veracity of Finley's statements, can be properly addressed by the government on cross-examination.").

Finally, Comtech's motion recites language from Rule 403 and asserts without elaboration that Mr. Goolsby's opinion is inadmissible under that rule. Mot. 10. But, plainly, Mr. Goolsby's opinions are probative of one of the key issues in this case—whether Ms. Houserman violated internal controls and accounting standards—and Comtech points to nothing in his testimony that would be unfairly prejudicial, waste time, or be cumulative.

### III.   CONCLUSION

Because Mr. Goolsby's opinions are relevant, reliable, and likely to be helpful to the jury, this Court should deny Comtech's motion to exclude his report, opinions, and testimony.

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
TO EXCLUDE LYNNE HOUSERMAN'S PROFFERED
EXPERT GARY B. GOOLSBY
(CASE NO. 2:19-cv-00644-RAJ) - 12

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200   FAX, (206) 407-2224

Dated this 16th day of November, 2020.

**CALFO EAKES LLP**

By: /s/ *Angelo J. Calfo*
Angelo J. Calfo, WSBA# 27079
Kristin W. Silverman, WSBA #49421
Gabriel Reilly-Bates, WSBA #52257
Henry C. Phillips, WSBA #55152
1301 Second Avenue, Suite 2800
Seattle, WA 98101
Phone: (206) 407-2200
Email: angeloc@calfoeakes.com
kristins@calfoeakes.com
gaber@calfoeakes.com
henryp@calfoeakes.com

*Attorneys for Lynne Houserman*

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
TO EXCLUDE LYNNE HOUSERMAN'S PROFFERED
EXPERT GARY B. GOOLSBY
(CASE NO. 2:19-cv-00644-RAJ) - 13

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200   FAX, (206) 407-2224