# EXHIBIT B

**CONFIDENTIAL**

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

LYNNE HOUSERMAN                                :
                                               :
                                   Plaintiff,  :
                                               :
          v.                                   :
                                               :
COMTECH TELECOMMUNICATIONS                     :
CORPORATION, FRED KORNBERG,                    :   Case No. 2:19-cv-00644-RAJ-BAT
AND MICHAEL D. PORCELAIN,                      :
                                               :
                                   Defendants. :
                                               :
                                               :
                                               :
                                               :

**Expert Rebuttal Report of Elaine Lehnert, CPA, CFF**
October 2, 2020

**CONFIDENTIAL**

# Table of Contents

I. INTRODUCTION ...................................................................................................................... 3

II. PROFESSIONAL BACKGROUND ......................................................................................... 3

III. SUMMARY OF OPINIONS .................................................................................................... 5

IV. RELEVANT FACTUAL AND INTERNAL CONTROL BACKGROUND............................. 5

a. Sequence of Events at Comtech ............................................................................................ 5

b. Relevant Internal Control Guidance.................................................................................... 11

i. *SOX and COSO Internal Control Framework* ................................................................... 11

ii. *The Control Environment* ................................................................................................. 13

iii. *Management Override* ...................................................................................................... 15

iv. *Roles and Responsibilities for Internal Controls* ............................................................. 15

v. *Internal Control Evaluation and Identification of Deficiencies* ........................................ 17

c. Code of Conduct and Company Guidelines ........................................................................ 18

i. *Standards of Business Conduct* ........................................................................................ 18

ii. *HR & Employee Compensation Guidelines* ...................................................................... 19

V. OPINIONS & ANALYSIS ...................................................................................................... 20

a. Ms. Houserman's Actions Overrode Internal Controls Over Financial Reporting. ............ 21

b. Ms. Houserman's Actions Compromised the Company's Internal Control Environment by Disregarding Comtech's Standards of Business Conduct and Were Inappropriate. .................. 25

c. Deloitte Properly Concluded Ms. Houserman's Override to Be a Significant Deficiency in Comtech's Internal Controls Over Financial Reporting. ........................................................... 27

VI. CONCLUSION........................................................................................................................ 30

VII. SIGNATURE AND RIGHT TO MODIFY............................................................................. 31

EXHIBIT A: CURRICULUM VITAE OF ELAINE LEHNERT

EXHIBIT B: MATERIALS RELIED UPON

**CONFIDENTIAL**

## I. INTRODUCTION

1. Ankura Consulting Group LLC ("Ankura") has been retained by Paul, Weiss, Rifkind, Wharton & Garrison LLP, counsel for Defendant Comtech Telecommunications Corporation ("Comtech" or the "Company"), Fred Kornberg, and Michael Porcelain, in connection with the above-referenced matter.  On behalf of Ankura, I, Elaine Lehnert, have been asked to respond to the opinions reached by Gary B. Goolsby in his August 14, 2020 Report submitted on behalf of Plaintiff Lynne Houserman (hereinafter the "Goolsby Report") to the extent they relate to internal controls.

2. Ankura was engaged in this matter at the hourly billing rates of the individuals, plus expense. My billing rate in this matter is $725 per hour.  My fees are not contingent on the opinions expressed herein or on the outcome of these proceedings.

3. In performing this engagement, I, and/or staff working under my direction, have reviewed various materials, including the Goolsby Report.  A listing of relevant materials I reviewed and relied upon in preparing this report is attached as Exhibit B.  As of the date of this report my work on this matter is ongoing and I may amend this report based on new information that comes to my attention during such review.

4. My staff and I performed this engagement in accordance with the American Institute of Certified Public Accountants ("AICPA") Statement on Standards for Forensic Services No. 1 ("SSFS No. 1").

## II. PROFESSIONAL BACKGROUND

5. I am a Managing Director in the Investigations and Accounting Advisory practice of Ankura Consulting Group LLC.  I specialize in the provision of consulting services relating to internal control assessment, financial accounting and reporting, and forensic accounting analysis to attorneys in litigation, arbitration, and investigation matters.  My curriculum vitae is attached as Exhibit A.  During the last 30 years, I have developed considerable professional expertise relating to financial and accounting controls.  In particular, since the enactment of the Sarbanes-Oxley Act ("SOX") in 2002, I have developed significant expertise relating to SOX control development, assessment, and compliance.  I developed my SOX expertise by consulting with, and performing professional services for, hundreds of publicly traded corporations on SOX-related matters.

CONFIDENTIAL

6.  Prior to joining Ankura in 2016, I was employed as a Managing Director by FTI Consulting, a global business consulting and advisory firm.  I performed consulting services relating to a broad range of accounting and internal control disciplines including those relating to SOX compliance by publicly traded corporations.

7.  Between 1999 and 2011, I was employed by Veris Consulting Inc., a forensic accounting consulting firm headquartered in Reston, Virginia.  I performed consulting services relating to a broad range of accounting and internal control disciplines including those relating to compliance with SOX by publicly traded corporations.  I also served as the outsourced internal audit provider for PXRE, a NYSE publicly traded reinsurance company until its acquisition by Argo Group.

8.  Between 1995 and 1999, I was employed by the national professional accountancy organization, the AICPA, which administers the Uniform CPA Examination and promulgates and enforces national professional standards for financial auditing and accounting.  I served as a Technical Manager in its Accounting Standards Division, during which time I assisted in the development of generally accepted accounting principles ("GAAP") and audit and accounting guidelines and standards.

9.  In addition, I was responsible for making quarterly presentations regarding AICPA activities to the National Association of Insurance Commissioners, working directly with the insurance regulatory process, evaluating and commenting on regulatory proposals, serving as primary staff liaison with various state insurance regulators, and acting as AICPA primary staff liaison on technical matters related to insurance accounting with the U.S. Securities and Exchange Commission ("SEC") staff and the Financial Accounting Standards Board ("FASB") staff.

10. I began my career as an auditor at KPMG, a national public accounting firm, where I was responsible for a broad range of accounting, auditing, and financial statement preparation and reporting functions.  I was with KPMG from 1988-1995.  In 1992, I obtained a Certified Public Accounting ("CPA") license from the State of New Jersey which I have continuously maintained for the past 28 years.  In 2008, I obtained from the AICPA the credential of Certified Financial Forensics ("CFF").  The CFF credential is granted exclusively to professional accountants who demonstrate considerable expertise in forensic accounting through their knowledge, skills, and expertise.

CONFIDENTIAL

### III.   SUMMARY OF OPINIONS

11.   It is my opinion that Mr. Goolsby's overall conclusion that "[Ms.] Houserman's actions were consistent with the guidelines and expectations pursuant to the rules for accrual accounting and the internal control over financial reporting ('ICFR') requirements of Sarbanes Oxley ('SOX') under the securities acts relating to public companies like Comtech"[1] is incorrect and at variance with the authoritative literature and the historical record.

12.   Contrary to Mr. Goolsby's opinion, based on my review of the materials listed in Exhibit B and my knowledge, training, and professional experience, it is my opinion that Ms. Houserman overrode Comtech's internal controls and Comtech's policies and procedures, which constituted, at a minimum, a significant deficiency in Comtech's compliance with the internal control over financial reporting requirements under the SEC's ICFR requirements and Committee of Sponsoring Organizations of the Treadway Commission ("COSO").

13.   Internal controls are weakened if management has the ability to override them at will.  When such overrides go unchecked, companies are often no better off than if they had no controls in place.  It is my opinion that Ms. Houserman's actions compromised the Company's internal control environment by disregarding Comtech's Standards of Business Conduct and were therefore inappropriate.

### IV.   RELEVANT FACTUAL AND INTERNAL CONTROL BACKGROUND
#### a.   Sequence of Events at Comtech

14.   Comtech is a provider of advanced communication solutions for both commercial and government customers worldwide.[2]  TeleCommunication Systems, Inc. ("TSYS") is a wholly owned subsidiary of Comtech.

15.   During the relevant period, Ms. Houserman was President of Comtech's Safety and Security Technologies ("SST") Group.  Jason Christensen was VP of Finance for SST and reported to Ms. Houserman.[3]

---

[1] Goolsby Report at 6.
[2] Form 10-K, Comtech Telecommunications Corporation, fiscal year ended July 31, 2019, at 1.
[3] Deposition of Jason Christensen (Rough Draft Transcript), September 24, 2020, at 8, 11.

CONFIDENTIAL

16.     On September 29, 2017, Ms. Houserman received an email from Comtech's CFO, Michael
        Porcelain, attaching a document titled "FY 2018 Performance Incentive Compensation
        Targets" and referred to as the "Fiscal 2018 Goal Sheet."  The Fiscal 2018 Goal Sheet had
        been approved by Comtech's Executive Compensation Committee ("ECC") as well as Fred
        Kornberg, CEO and President of Comtech.[4]  Ms. Houserman replied to Mr. Porcelain and
        Mr. Kornberg on October 2, 2017 and attached her signed Fiscal 2018 Goal Sheet.  Her reply
        did not contain any complaints or questions.  Mr. Porcelain then forwarded the signed Fiscal
        2018 Goal Sheet to Maria Ceriello, Director of Financial Operations at Comtech.[5]  Ms.
        Houserman, pursuant to Company policies and procedures, was required to ensure that the
        monthly incentive expense accrual was recorded accurately in accordance with the Fiscal
        2018 Goal Sheet.   Comtech's Human Resource ("HR") and Employee Compensation
        Guidelines, referred to as Policy #08-01-11, specifically states, "Corporate and subsidiary
        finance personnel are responsible to ensure that the appropriate amount of non-equity
        incentive plan and other bonus expense is accrued each month."[6]

17.     On October 10, 2017, Mr. Porcelain emailed both Ms. Houserman and Mr. Christensen
        regarding PwC's SOX internal audit fees.[7]  Mr. Porcelain stated that the internal audit fees
        for SST were much greater in comparison to other subsidiaries due to rework, delays, and
        overall inefficiencies.   He also told Ms. Houserman and Mr. Christensen that during a
        meeting, the PwC partner provided feedback to Mr. Porcelain regarding the internal audit
        saying "she felt there was no strong oversight by SST management of. . . the SOX controls[,]
        and there was no sense of ownership of the SOX controls."[8]

18.     On November 8, 2017, Ms. Ceriello emailed Mr. Christensen to inquire if the SST bonus
        accrual had been calculated.[9]  The next day, Mr. Christensen responded with the total amount

---

[4] TSYS012864-65, Email and attachment from Michael Porcelain to Lynne Houserman, September 29, 2017.
[5] Eichberger00020, Fiscal Year 2018 Goal Sheet for Lynne Houserman signed on October 2, 2017. TSYS022589,
Email from Michael Porcelain to Maria Ceriello on October 3, 2017.
[6] Eichberger00028 at 67, Comtech Telecommunications Corp. HR & Employee Compensation Guidelines.
[7] Comtech engaged Pricewaterhouse Coopers ("PwC") to perform internal audit services.
[8] TSYS070606, Email from Michael Porcelain to Lynne Houserman, Jason Christensen, October 10, 2017.
[9] TSYS048553-555, Emails between Maria Ceriello and Jason Christensen, November 8, 2017 through November
10, 2017.

CONFIDENTIAL

of the accrual.  Ms. Ceriello replied that the amount does "not reflect Lynne's final goals" and asked him if Ms. Houserman had provided him with a final goal sheet.[10]

19.  Later on November 9, 2017, Mr. Christensen emailed Ms. Houserman and requested a copy of her new 2018 Goal Sheet.[11]  Ms. Houserman provided her Fiscal 2018 Goal Sheet which included a Call Handling reduction of $6.297 million.[12]  The version of Ms. Houserman's Fiscal 2018 Goal Sheet provided to Mr. Christensen contained only Mr. Kornberg's signature and was not the version of the Fiscal 2018 Goal Sheet that Ms. Houserman had signed and submitted to Mr. Kornberg.[13]  Ms. Houserman did not inform Mr. Christensen that she had signed the goal sheet in October 2017 with the adjustment and did not provide Mr. Christensen with the version of the goal sheet that she had signed and provided to Mr. Kornberg.  According to Mr. Christensen, he was "led to believe" that Ms. Houserman's Fiscal 2018 Goal Sheet was "in dispute," Ms. Houserman had "insisted on creating a journal entry that was different than what the goal sheet said," and it turned out that "the contract had been signed and [he] didn't have full information."[14]

20.  At this time, Ms. Houserman claimed she was alerted that the Fiscal 2018 Goal Sheet included a $6.297 million deduction from actual pre-tax profit.  Ms. Houserman claimed that she did not notice the amount at the time of signing the document on October 2, 2017 and it was the same deduction as the previous year.  On the same day, Mr. Christensen relayed to Ms. Houserman that he "spoke to Maria in NY, sounds like the $6.297M Call Handling reduction to profit will apply again this year."[15]  In response, Ms. Houserman stated that she was "working on this with Fred [Kornberg]."[16]

21.  Meanwhile, on November 9, 2017, Ms. Houserman informed Mr. Kornberg that "in reviewing the 2018 Goal Sheet in more detail" she "found an error in the small print" of the

[10] TSYS025267, Emails between Maria Ceriello and Jason Christensen, November 8, 2017 through November 9, 2017.
[11] TSYS070715, Emails between Lynne Houserman, Jason Christensen, and Maria Ceriello, November 8, 2017 through November 9, 2017.
[12] TSYS070730-31, Emails between Lynne Houserman and Jason Christensen, November 9, 2017. TSYS012864 at 65, Attachment from Michael Porcelain to Lynne Houserman, September 29, 2017.
[13] Eichberger00299, Email from Michael Porcelain to Nicole Eichberger, March 22, 2018.
[14] Deposition of Jason Christensen (Rough Draft Transcript), September 24, 2020, at 13.
[15] TSYS070740-41, Emails between Lynne Houserman and Jason Christensen, November 9, 2017.
[16] TSYS070740-41, Emails between Lynne Houserman and Jason Christensen, November 9, 2017.

CONFIDENTIAL

Fiscal 2018 Goal Sheet related to the reduction for Call Handling product line costs.  Mr. Kornberg replied and asked Ms. Houserman to send the "Stan agreement between SST and ENT on the Call Handling transfer agreement."[17]

22.  The following day, on November 10, 2017, Ms. Houserman forwarded to Mr. Kornberg an email originally sent by Mr. Porcelain on September 21, 2016 outlining the impact on the SST bonus pool.  Mr. Kornberg consulted with Mr. Porcelain.  In response, Mr. Porcelain emailed Mr. Kornberg to inform him the agreement was more complicated than indicated in the email forwarded by Ms. Houserman, and he would follow up with him on Monday.[18]

23.  The SST Q1 2018 Quarterly Financial and Disclosure Consideration Checklist, also referred to as the quarterly certification or sub-certification, was submitted by Mr. Christensen to Paul Steo, Comtech Director of Internal Audit, on November 17, 2017 via email.[19]  Both Ms. Houserman and Mr. Christensen signed the quarterly certification and thereby certified that "the information contained in the 10-31-17 financial package for Safety & Security Technologies is complete, accurate and in compliance with generally accepted accounting principles."  The last page of the checklist noted a "general bonus accrual calculation included an error" which "the SST President has requested be corrected by the CEO."[20]  However, there was no mention that Ms. Houserman directed a manual journal entry to be recorded to increase the bonus accrual without any supporting documentation.

24.  On December 5, 2017, Mr. Christensen asked Ms. Houserman to confirm if the 2018 bonus was still in dispute.  Ms. Houserman responded that it was "still very much in dispute-it [the Call Handling reduction] should NOT be part of the accrual."[21]  Ms. Houserman instructed Mr. Christensen to record an additional amount to the SST bonus accrual for the month of November 2017 that was not supported by the executed Fiscal 2018 Goal Sheet and conflicted

---

[17] TSYS074608 at 09, Emails between Michael Porcelain, Lynne Houserman, and Fred Kornberg, November 9, 2017 through November 10, 2017.
[18] TSYS074608 at 08, Emails between Michael Porcelain, Lynne Houserman, and Fred Kornberg, November 9, 2017 through November 10, 2017.
[19] TSYS080512, Emails between Jason Christensen, Paul Steo, Lynne Houserman, November 17, 2017.
[20] TSYS080513 at 513 and 518, Quarterly Financial and Disclosure Consideration Checklist for Q1 2018.
[21] TSYS070806-807, Emails between Lynne Houserman, Jason Christensen, and Paul Steo, December 5, 2017.

**CONFIDENTIAL**

with the instruction from Corporate Accounting a month prior that "the $6.297M Call Handling reduction to profit will apply again this year."[22]

25.   On December 8, 2017, Mr. Christensen and SST's Senior Financial Analyst, Katy Shulman, uploaded and posted the bonus accrual journal entry.  Mr. Christensen indicated in the support for the manual journal entry that the disputed Call Handling reduction was "Removed per Lynn Housermann [sic] request."[23]  Mr. Christensen also indicated that the November bonus accrual would "include a $120K catchup for Q1" in order to reverse the impact of the Call Handling reduction that had been included in the Q1 bonus accrual manual journal entry.[24] Ms. Houserman caused the SST bonus accrual to be overstated.

26.   Ms. Houserman's actions were inconsistent with Comtech's Policy #08-01-11 and the Company's Standards of Business Conduct ("SOBC") and caused the SST VP of Finance and an SST Senior Financial Analyst to record the improper adjustment for November 2017.

27.   Ms. Houserman continued to circumvent controls when, on January 9, 2018, she again directed Mr. Christensen and his staff to increase the bonus accrual and make a similar adjustment for the month of December 2017.[25]  Again, her actions were inconsistent with Policy #08-01-11 and the Company's SOBC.

28.   Ms. Houserman and Mr. Christensen signed the Q2 2018 Quarterly Financial and Disclosure Consideration Checklist on March 2, 2018 for the information contained in the January 31, 2018 financial package.  On the second to last page of the Q2 2018 quarterly certification a note stated: "SST's Q1 Disclosure noted an adjustment (increase) to the General and President Bonus accrual, as the SST President believed a reduction of $6.2M to SST's PBT noted on the goal sheet was in error."[26]  This statement is not accurate.  The Q1 2018 quarterly certification did not disclose an increase to the General and President Bonus Accrual.  Instead

---

[22] Eichberger00308-311, Emails and attachments between Nicole Eichberger, Michael Porcelain, Jason Christensen, and Katy Shulman, November 2017 through March 2018,TSYS048553, Emails between Maria Ceriello and Jason Christensen, November 8, 2017 through November 10, 2017, and TSYS070740-41, Emails between Lynne Houserman and Jason Christensen, November 9, 2017.
[23] Eichberger00308 at 310, Emails and attachments between Nicole Eichberger, Michael Porcelain, Jason Christensen, and Katy Shulman, November 2017 through March 2018.
[24] TSYS070806, Emails among Jason Christenson and Lynne Houserman, December 5, 2017.
[25] TSYS072040-42, Emails between Lynne Houserman, Jason Christensen, and Paul Steo, December 5, 2017.
[26] TSYS079971 at 75, Quarterly Financial and Disclosure Consideration Checklist for Q2 2018.

CONFIDENTIAL

it merely stated that the "SST President has requested [the error] be corrected by the CEO" but did not claim that the adjustment had been recorded.[27]  Per Mr. Christensen, Ms. Houserman had made the changes in the language of the Q2 2018 certification disclosure that claimed the adjustment to the bonus accrual had been made in Q1.[28]

29.   On February 13, 2018, Corporate Accounting discovered Ms. Houserman's actions and instructed Mr. Christensen to reverse the over-accrual of the bonus amount for the quarterly close for Q2 2018.  In response, Ms. Houserman emailed Mr. Kornberg.  Mr. Kornberg responded that her "November correction was not authorized" and that she needed "to reverse [her] unilateral (which was wrong and unauthorized) decision before the close of Q2."[29]  A manual adjusting journal entry was posted on February 13, 2018 to correct the over-accrual.[30]

30.   On the same day, February 13, 2018, Ms. Houserman met via phone with Mr. Porcelain and Michael Bondi, Comtech's Controller, to discuss a tax audit and sales commission plans. During this meeting, Mr. Porcelain reiterated to Ms. Houserman that he did not believe the $6.297 million Call Handling reduction to be an error.[31]

31.   On February 20, 2018, Deloitte conducted fraud inquires of Mr. Porcelain as part of its design and implementation review of entity level controls.  Mr. Porcelain noted during this discussion that it appeared the President of SST (Ms. Houserman) had overridden controls. During this inquiry, the Deloitte audit team asked Mr. Porcelain "what were [his] views regarding the risks of fraud?"  Deloitte's summary of Mr. Porcelain's response stated that "at this time it does appear that the business unit's controls were overridden."[32]

32.   On February 28, 2018, Mr. Bondi emailed Ms. Houserman and Mr. Christensen requesting that the SST Q2 2018 quarterly certification be updated and resubmitted.  During this email

---

[27] TSYS080513 at 518, Quarterly Financial and Disclosure Consideration Checklist for Q1 2018.
[28] TSYS024656, Email between Jason Christensen, Michael Porcelain, and Paul Steo, March 5, 2018.
[29] TSYS014381-84, Email between Lynne Houserman and Fred Kornberg on February 13, 2018 regarding the 2018 Bonus Goal Sheet.
[30] TSYS072043-44, Journal Entry and Supporting Documentation for Bonus Accrual, February 13, 2018.
[31] Eichberger00941 at 985, Houserman's timeline of events included in Eichberger Report Exhibit 8; Deposition of Michael Porcelain, July 29, 2020, at 179.
[32] DT 0000371-378, Deloitte Fraud inquiries of Michael Porcelain on February 20, 2018.

CONFIDENTIAL

correspondence, Mr. Bondi expressed that SST needed to create "a work plan to improve controls" and that the "specific enhancements will be discussed" with Internal Audit.[33]

33.   During the Audit Committee Meeting held on March 6, 2018, both Deloitte and PwC presented their findings in connection with the bonus accrual issue identified at SST.  It was determined that Ms. Houserman's overriding of the internal controls and instructions to record a manual journal entry with insufficient supporting documentation constituted a significant deficiency.  In addition, Deloitte informed the Audit Committee that based on its own independent review, Ms. Houserman's overrides and actions constituted "a lack of an appropriate 'tone at the top' of the SST business unit" and that, in the absence of further corrective action by the Company, Deloitte recommended "that there be no reliance on Ms. Houserman's representation of the internal control environment at SST business unit."[34]

34.   In that same Audit Committee meeting, PwC communicated its identification of several control deficiencies at SST during the second quarter of fiscal year 2018.  PwC also advised the Audit Committee that it agreed with Deloitte's assessments and recommended immediate corrective action with regard to the "tone at the top" issue with respect to Ms. Houserman. The Company, its independent external auditors, and its internal audit support firm agreed that Ms. Houserman's violations of internal controls and accounting principles constituted a significant deficiency.[35]

35.   Ms. Houserman was subsequently terminated on April 2, 2018.  For failing to conduct proper diligence into Ms. Houserman's goal sheet, and relying on Ms. Houserman's word, Mr. Christensen lost management responsibilities, did not receive a bonus in 2018 and did not receive his annual pay raise.[36]

### b.  Relevant Internal Control Guidance

#### i.  *SOX and COSO Internal Control Framework*

---

[33] TSYS079968-70, Emails between Paul Steo, Michael Bondi, Jason Christensen, Lynne Houserman, and Rich Jacullo, February 28, 2018 through March 2, 2018.
[34] DT 0000655-661, Minutes of a Meeting of the Audit Committee of the Board of Directors for Comtech Telecommunications Corp., March 6, 2018.
[35] *Id.*
[36] Deposition of Jason Christensen (Rough Draft Transcript), September 24, 2020, at 184-186 and 221-223.

CONFIDENTIAL

36. Management of public companies is responsible for establishing and maintaining an adequate ICFR as defined in Rule 13a-15(f) under the Exchange Act.  SOX, which was signed into law on July 30, 2002, formed the Public Company Accounting Oversight Board ("PCAOB").  Under SOX, management is obligated to identify and assess the risks to reliable financial reporting.  SOX also requires the CEO and CFO of publicly held companies to certify on a quarterly basis the completeness and accuracy of specified reports filed under the 1934 Act ("Section 302").

37. The SEC rules require that management perform a formal assessment of its ICFR including testing of the design and operating effectiveness of the internal controls.[37]  This assessment must be made using a recognized internal controls framework.  The SEC has stated that the COSO Framework[38] "may be used as an evaluation framework for purposes of management's annual internal control evaluation and disclosure requirements."[39]  Most U.S. companies, including Comtech, use the COSO framework. [40]

38. The COSO Framework defines internal control as "a process, effected by an entity's board of directors, management, and other personnel, designed to provide reasonable assurance regarding the achievement of objectives relating to operations, reporting, and compliance," consisting of five interrelated components: the control environment, risk assessment, control activities, information and communication, and monitoring.[41]

39. Management's assessment of its ICFR is performed annually and as of year-end.  Management makes this assessment by identifying, assessing, and testing the design and operating effectiveness of the key controls that will either prevent or detect material errors in

[37] SEC Final Rule, Commission Guidance Regarding Management's Report on Internal Control Over Financial Reporting Under Section 13(a) or 15(d) of the Securities Exchange Act of 1934, Release No. 33-8810, Effective June 27, 2007.
[38] COSO is an independent private sector initiative organized in 1985 to provide thought leadership on enterprise risk management, internal control, and fraud deterrence. *Committee of Sponsoring Organizations of the Treadway Commission: About Us*, https://www.coso.org/Pages/aboutus.aspx, accessed September 23, 2020.  In 1992, COSO published its "Internal Control – COSO Framework."  This framework was revised and reissued in 2013.  I refer to the revised, 2013 framework issued as the "COSO Framework" in this report.
[39] SEC Final Rule, Management's Report on Internal Control Over Financial Reporting and Certification and Disclosure in Exchange Act Periodic Reports, Release Nos. 33-8238, Effective August 14, 2003, Section II.B.3.a.
[40] Form 10-K, Comtech Telecommunications Corporation, fiscal year ended July 31, 2018, page 75.
[41] COSO Internal Control – Integrated Framework, 2013 edition, Chapter 1: Definition of Internal Control.

CONFIDENTIAL

the transactions that constitute the balances in significant accounts in the financial statements or in the way the financial statements are prepared and presented.

40. Comtech performs certain financial reporting and disclosure control procedures consistent with the COSO framework and in compliance with SEC rules and regulations, including SOX Section 302.  In relevant part, Comtech's procedures "require[] that each Subsidiary or Business Unit adopt and maintain internal controls and disclosure processes that are designed to, among other items, provide reasonable assurance that: (i) *financial transactions are properly authorized*, (ii) assets are safeguarded against unauthorized or improper use and (iii) *transactions are properly recorded and reported*."[42]  As part of the disclosure control process, the President and Finance Director (or equivalent) of each Business Unit were required to provide quarterly certifications and to complete a disclosure certification checklist which includes questions relating to changes in accounting principles or policies and changes to internal control policies, structure or operations.[43]  Comtech's control procedures further provide that "*each Subsidiary or Business Unit President is held accountable* to implement and maintain Comtech's company-wide internal control structure."[44]

41. Effective internal control over financial reporting provides reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes.

## ii.  The Control Environment

42. The COSO Framework emphasizes that the control environment is the set of standards, processes, and structures that provide the basis for carrying out internal control across the organization.  Senior management, including division presidents like Ms. Houserman, establish the tone at the top regarding the importance of internal control, including expected standards of conduct.[45]  In order to have a strong control environment, management needs to reinforce expectations at all levels of the organization.[46]

---

[42] TSYS079903 at 905, Audit Committee Meeting Gray Book – Agenda, September 26, 2017 (emphasis added).
[43] *Id.*
[44] *Id.* (emphasis added).
[45] COSO Internal Control – Integrated Framework, Executive Summary, 2013 edition, at 4.
[46] *Id*.

**CONFIDENTIAL**

43. The control environment consists of the control owners and other personnel responsible for executing business processes and the environment in the departments and divisions within which they operate. It sets the tone for the effective functioning of these processes and influences the control consciousness of all personnel involved in making the process work. The control environment is the foundation for all other components of internal control. In this matter, Ms. Houserman was the President of a significant subsidiary, SST, and was responsible for establishing an effective control environment to serve as the strong foundation within all ICFR for her division.

44. The COSO Framework's "Control Environment Factors," specifically the "Integrity and Ethical Values" subsection, drives directly to the heart of this matter:

> The effectiveness of internal controls cannot rise above the integrity and
> ethical values of the people who create, administer and monitor them.
> Integrity and ethical values are essential elements of the control environment,
> affecting the design, administration and monitoring of other internal control
> components.[47]

45. In describing fundamental concepts associated with internal control, COSO provides that "internal control is effected by people. It's not merely policy manuals and forms, but people at every level of an organization."[48] The original COSO Framework further explains that "[i]nternal control is, to some degree, the responsibility of everyone in an organization and therefore should be an explicit or implicit part of everyone's job description. Virtually all employees produce information used in the internal control system or take other actions needed to effect control."[49]

46. According to a 2017 presentation to Comtech's Audit Committee, "the Company has in place operational company-level controls (entity-level) over all Comtech locations and business units." These entity-level controls "include testing of the Standards of Business Conduct Certification, Periodic Business Reviews, Board and Audit Committee Oversight and other company-wide controls that apply to all Business Units."[50]

---

[47] COSO Internal Control – Integrated Framework, 1992 edition, at 17.
[48] COSO Internal Control – Integrated Framework, 1992 edition, at 7.
[49] COSO Internal Control – Integrated Framework, 1992 edition, at 5.
[50] TSYS079903 at 907-908, Audit Committee Meeting Gray Book – Agenda, September 26, 2017.

CONFIDENTIAL

### iii.   Management Override

47. As defined by the COSO Framework, management override is an "action taken by management in an attempt to override the entity's controls for an illegitimate purpose."[51] Even though internal controls over financial reporting may appear to be well-designed and effective, controls that are otherwise effective can be overridden by management.[52] Many financial statement frauds have been perpetrated by intentional override by management of what might otherwise appear to be effective internal controls.[53] Both the American Institute of Certified Public Accountants and the Association of Certified Fraud Examiners acknowledge that "personnel within the organization generally know the controls and standard operating procedures that are in place to prevent fraud.  It is reasonable to assume that individuals who are intent on committing fraud will use their knowledge of the organization's controls to do it in a manner that will conceal their actions."[54]

48. An appropriate tone at the top, as set by the board of directors and management; implementation of a code of conduct/ethics; training programs; and cultivating a rigorous whistleblower program may be helpful fraud deterrents, but their mere existence will seldom provide assurance that management override can be prevented or timely detected.

49. Management override impacts the external auditor's risk assessment of a company and their assessment of a company's internal controls.

### iv.   Roles and Responsibilities for Internal Controls

50. **Management's Responsibilities**: Management of public companies is responsible for establishing and maintaining an adequate internal control over financial reporting as defined in Rule 13a-15(f) under the Exchange Act.  SOX requires that the management of public companies evaluate and assess the effectiveness of internal control over financial reporting, as of the end of the issuer's fiscal year.[55]  Comtech's Internal Audit function evaluates the

---

[51] COSO Internal Control – Integrated Framework, 2013 edition, at 65.
[52] AICPA, Management Override of Internal Control: The Achilles' Heel of Fraud Prevention § A (2016).
[53] Id.; see also Association of Certified Fraud Examiners and American Institute of Certified Public Accountants, "Managing the Business Risk of Fraud: A Practical Guide."
[54] Association of Certified Fraud Examiners and American Institute of Certified Public Accountants, "Managing the Business Risk of Fraud: A Practical Guide."
[55] 15 U.S.C. § 7262(a).

CONFIDENTIAL

effectiveness of internal control over financial reporting and is supplemented with staff from PwC who perform certain tasks at management's direction.

51.  If management determines that a deficiency in ICFR exists, that deficiency must be evaluated to determine whether it constitutes a material weakness.  The SEC provides guidance designed to assist management with that evaluation.[56]  The SEC requires that "a company's principal executive officer and principal financial officer must certify that they have disclosed significant deficiencies in the design or operation of ICFR that are reasonably likely to adversely affect the company's ability to record, process, summarize and report financial information to the external auditor and the audit committee with the intended result that these parties can more effectively carry out their respective responsibilities with regard to the company's financial reporting."[57]

52.  *Audit Committee:* The role of the Audit Committee is to oversee the financial reporting process and the performance of the independent auditor.  They are viewed as the chosen representative of the investors.

53.  *External Auditor's Roles and Responsibilities:* Deloitte's role as Comtech's external auditor was to audit the consolidated financial statements and internal controls over financial reporting (referred to as the integrated audit).[58]  Section 404 of SOX also requires every registered public accounting firm that prepares or issues an audit report on a company's annual financial statements to attest to, and report on, the assessment made by management.  The auditor's attestation must be made in accordance with standards for attestation engagements issued or adopted by the PCAOB.[59]  Auditors are required to adopt a top-down, risk-based approach that emphasizes areas such as entity-level controls and risks within the control environment and the controls that mitigate those risks.

---

[56] SEC Final Rule, Definition of the Term Significant Deficiency, Release No. 33-8829, Effective September 10, 2007.
[57] SEC Final Rule, Definition of the Term Significant Deficiency, Release No. 33-8829, Effective September 10, 2007.
[58] TSYS079983 at 42, 44, 45, 47, 54, and 62, Audit Committee Meeting Agenda, March 6, 2018.
[59] SEC Final Rule, Management's Report on Internal Control Over Financial Reporting and Certification and Disclosure in Exchange Act Periodic Reports, Release No. 33-8238, Effective August 14, 2003.

CONFIDENTIAL

54.   Deloitte was required under the PCAOB Standards to report any identified significant deficiencies in internal controls to the Audit Committee.[60]

*v.*   ***Internal Control Evaluation and Identification of Deficiencies***

55.   The PCAOB defines that a deficiency in internal control "exists when the design or operation of a control does not allow management or employees, in the normal course of performing their assigned functions, to prevent or detect misstatements on a timely basis."[61]   A deficiency in design exists when either (a) "a control necessary to meet the control objective is missing" or (b) "a existing control is not properly designed so that, even if the control operates as designed, the control objective would not be met."[62]   A deficiency in operation exists "when a properly designed control does not operate as designed, or when the person performing the control does not possess the necessary authority or competence to perform the control effectively."[63]

56.   The SEC defines a significant deficiency as "a deficiency, or a combination of deficiencies, in internal control over financial reporting that is less severe than a material weakness, yet important enough to merit attention by those responsible for oversight of the registrant's financial reporting."   It defines a material weakness as "a deficiency, or a combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of the registrant's annual or interim financial statements will not be prevented or detected on a timely basis."[64]

---

[60] PCAOB AS 1305, Communications About Control Deficiencies in an Audit of Financial Statements.
[61] PCAOB AS 2201, An Audit of Internal Control Over Financial Reporting That Is Integrated with An Audit of Financial Statements, Appendix A Definitions and PCAOB AS 1305, Communications About Control Deficiencies in an Audit of Financial Statements (paragraphs 1-3).
[62] *Id.*
[63] *Id.*
[64] SEC Final Rule, Definition of the Term Significant Deficiency, Release No. 33-8829, Effective September 10, 2007 and Regulation S-X Rule 1-02(a)(4).  Note: The PCAOB uses the same definitions for significant deficiency and material weakness.

CONFIDENTIAL

57. The SEC and PCAOB concluded that a deficiency in internal controls is significant if it could adversely affect the company's financial reporting process to the point that persons responsible for oversight of the company's financial reporting would be concerned about it.[65]

### c.   Code of Conduct and Company Guidelines
#### i.   Standards of Business Conduct

58. Comtech's business involves relations with public officials, shareholders, and other members of the community.  It files various reports with the SEC and other government agencies.  As such, Comtech expects employees to maintain the highest ethical standards concerning all business relations and in the conduct of the Company's affairs.  These expectations are stated in the Company's Standards of Business Conduct.[66]

59. The purpose of these SOBC is to reinforce the Company's ethical climate and to provide basic guidelines for situations in which ethical issues may arise.

60. Comtech's SOBC states:

> One essential objective is our conviction to uphold ethical standards in all of our corporate activities. These standards apply to all of the Company's activities in every market that it serves. The purpose of these Standards of Business Conduct is to reinforce the Company's ethical climate and to provide basic guidelines for situations in which ethical issues may arise.
>
> We expect all our employees (including individual contractors and individual consultants) and directors to perform their work with honesty, truthfulness, and integrity, and we strive to do business with customers and suppliers of sound business character and reputation.
>
> It is the policy of the Company to comply with all applicable laws, including, without limitation, employment, import, export and economic sanction laws, discrimination, health, safety, antitrust and securities laws. No director, officer, executive, manager or any other employee of the Company has authority to violate any law or to direct anyone to violate any law on behalf of the Company.
>
> Each employee of the Company is, and will be held, responsible for the observance of these Standards of Business Conduct, as well as the specific laws and Company policies and procedures that apply to them and their roles.[67]

---

[65] PCAOB AS 2201, An Audit of Internal Control Over Financial Reporting That Is Integrated with An Audit of Financial Statements and SEC Final Rule, Definition of the Term Significant Deficiency, Release No. 33-8829, Effective September 10, 2007.
[66] TSYS000502, Comtech Standards of Business Conduct, published July 2017.
[67] TSYS000502 at 505, Comtech Standards of Business Conduct, published July 2017.

CONFIDENTIAL

61.   The SOBC has a specific section to "Financial Reporting and Accounting" that states:

> The Company is required to provide full, fair, accurate, timely and understandable disclosure in reports and documents that we may file with, or submit to the U.S. government, including agencies such as the SEC, and in other communications.

> Every employee who is responsible for providing information that is used in the preparation of these reports and filings should personally ensure themselves that such information is complete and accurate and complies with applicable governmental laws, rules and regulations.[68]

62.   Ms. Houserman read and certified that she understood Comtech's SOBC.  Moreover, Ms. Houserman agreed to abide by the SOBC and that any violation of the SOBC could lead to disciplinary action including dismissal.[69]

### ii.   HR & Employee Compensation Guidelines

63.   Comtech's HR & Employee Compensation Guidelines (referred to as Policy #08-01-11) serve to document the terms, practices, and policies of Comtech related to Human Resources and employee compensation.[70]

64.   The Key Employee Incentive Profit Sharing Plan section of Policy #08-01-11 states that "[t]he targeted bonus percentage for each subsidiary or group of subsidiaries, for each respective fiscal year, is documented on annual 'Goal Sheets'."  Per Policy #08-01-11, these "Goal Sheets must be signed by Comtech's CEO and the executive.  Although the actual bonus pool is calculated as a percentage of Pre-Tax Profits (as defined) as per the respective financial reporting package(s), it may be adjusted by Comtech's CEO or ECC, as applicable, at his or her discretion, for special or non-recurring items that were not in the original financial plan for the relevant fiscal year."[71]

65.   The Accrual of Non-Equity Incentive Plan and Bonus Expense section of Policy #08-01-11 states that "Corporate and each subsidiary or group of subsidiaries should be accruing non-equity incentive and other bonus expense during the year equal to the aggregate of: (1) the estimated profit sharing pool award for all employees, other than the Subsidiary President or

---

[68] TSYS000502 at 513, Comtech Standards of Business Conduct, published July 2017.
[69] TSYS014507, Standards of Business Conduct Certification signed by Lynne Houserman, August 28, 2017.
[70] Eichberger00028, Comtech Telecommunications Corp. HR & Employee Compensation Guidelines.
[71] Eichberger00028 at 64, Comtech Telecommunications Corp. HR & Employee Compensation Guidelines.

CONFIDENTIAL

Corporate Executive Officer, and (2) the estimated incentive compensation for the Subsidiary President or Corporate Executive Officer based on the estimated probable level of achievement of the performance goals set in the ***applicable Goal Sheet***" (emphasis added).[72]

66. The Accrual of Non-Equity Incentive Plan and Bonus Expense section of Policy #08-01-11 further states that "[i]f non-equity incentive plan and other bonus award estimates previously accrued are determined to be not payable, the accrual should be reversed in the period of such determination."[73]

## V.   OPINIONS & ANALYSIS

67. It is my opinion that Mr. Goolsby's overall conclusion that "[Ms.] Houserman's actions were consistent with the guidelines and expectations pursuant to the rules for accrual accounting and the internal control over financial reporting requirements of Sarbanes Oxley under the securities acts relating to public companies like Comtech"[74] is incorrect and inconsistent with the authoritative literature and the historical record.

68. Ms. Houserman was responsible for ensuring that the financial package for SST was complete, accurate, and in compliance with generally accepted accounting principles.  In addition, Ms. Houserman was responsible for ensuring that SST adopted and maintained internal controls and disclosure processes designed to provide reasonable assurance that (i) SST's financial transactions were properly authorized; (ii) SST's assets were safeguarded against unauthorized or improper use; and (iii) SST's transactions were properly recorded and reported.[75]

69. Contrary to Mr. Goolsby's opinion, based on my review of the materials listed in Exhibit B and my knowledge, training and professional experience, it is my opinion that Ms. Houserman overrode Comtech's internal controls and Comtech's policies and procedures which constituted at a minimum a significant deficiency in Comtech's compliance with the ICFR requirements under the SEC's ICFR requirements and COSO.  In addition, it is my opinion that Ms. Houserman's actions compromised the Company's internal control

---

[72] Eichberger00028 at 67, Comtech Telecommunications Corp. HR & Employee Compensation Guidelines.
[73] *Id.*
[74] Goolsby Report at 6.
[75] TSYS024643, Quarterly Financial and Disclosure Consideration Checklist for Q1 2018, as signed by Lynne Houserman and Jason Christensen.

CONFIDENTIAL

environment by disregarding Comtech's Standards of Business Conduct and were therefore inappropriate.

### a. Ms. Houserman's Actions Overrode Internal Controls Over Financial Reporting.

70. Mr. Goolsby claims that "[Ms.] Houserman's actions did not warrant a conclusion that she overrode internal controls of Comtech.  [Ms.] Houserman's actions were entirely appropriate and part of a healthy internal controls process."[76]  I strongly disagree.  Ms. Houserman overrode controls by directing a manual journal entry to be recorded without proper supporting documentation in conflict with Comtech's established internal controls.  She failed to disclose that she directed Mr. Christensen to accrue without the reduction in SST's SOX disclosure for Q1 2018.  Then, in SST's SOX certification for Q2 2018, she inaccurately represented that she had disclosed her instruction to accrue without the reduction for Q1, when in fact she had not.  Moreover, SST's signed Q2 certification was submitted to Comtech's corporate office on March 2, 2018,[77] after Mr. Kornberg had already told Ms. Houserman on February 13, 2018 that the Q1 accrual reduction was "wrong and unauthorized."[78]

71. The COSO Framework considers "financial officers and their staffs, whose control activities cut across, as well as up and down, the operating units of an enterprise" to be "of particular significance."[79]  Comtech's disclosures in its financial statements echo this importance and state that "management is responsible for establishing and maintaining adequate internal control over financial reporting as defined in Rules 13a-15(f) and 15d-15(f) under the Securities Exchange Act of 1934."[80]

72. Ms. Houserman, as President of SST, had a responsibility to maintain adequate internal controls over financial reporting, as stated in Comtech's financial statements and as required by Comtech's chosen internal control framework, the COSO Framework.  Ms. Houserman's

---

[76] Goolsby Report at 55.
[77] TSYS079968-70, Emails between Paul Steo, Michael Bondi, Jason Christensen, Lynne Houserman, and Rich Jacullo, February 28, 2018 through March 2, 2018.
[78] TSYS014381-84, Email between Lynne Houserman and Fred Kornberg on February 13, 2018 regarding the 2018 Bonus Goal Sheet.
[79] COSO Internal Control – Integrated Framework, 1992 edition, at 4.
[80] Form 10-K, Comtech Telecommunications Corporation, fiscal year ended July 31, 2017, Item 9A: Controls and Procedures.

**CONFIDENTIAL**

responsibilities regarding financial reporting and accounting were also outlined in Comtech's Standards of Business Conduct which require that "every employee who is responsible for providing information that is used in the preparation of these reports and filings should personally ensure themselves that such information is complete and accurate and complies with applicable governmental laws, rules and regulations." Ms. Houserman agreed to comply with the SOBC.[81]

73. Mr. Goolsby asserts that "Kornberg's and Porcelain's conduct fails the test of strong governance internal controls" and that "the tone at the top governance internal control weakness clearly was not at the SST Houserman level, but rather at the Comtech executive level."[82] This is incorrect and misses the point. Deloitte found "a lack of an appropriate 'tone at the top' of the SST business unit," ***not*** at the Comtech corporate level.[83] Moreover, it was Ms. Houserman's responsibility to respect the control framework in place and not to override controls irrespective of how she felt about how quickly Mr. Kornberg and Mr. Porcelain were responding to her or whether or not she agreed that their decision on the bonus accrual was good business practice.

74. Ms. Houserman was responsible for certifying that the information contained in SST's financial packages was "complete, accurate and in compliance with generally accepted accounting principles"[84] and that SST had adopted and maintained "internal controls and disclosure processes designed to provide reasonable assurance that (i) the business unit's financial transactions are properly authorized; (ii) the business unit's assets are safeguarded against unauthorized or improper use; and (iii) the business unit's transactions are properly recorded and reported."[85]

75. Mr. Goolsby also asserts that Ms. Houserman's "directions to SST's Vice President, Finance, Jason Christensen to accrue for her and the SST division's Fiscal 2018 bonuses excluding the

---

[81] TSYS000502 at 513, Comtech Standards of Business Conduct, published July 2017 and TSYS014507, Standards of Business Conduct Certification signed by Lynne Houserman, August 28, 2017.

[82] Goolsby Report at 40.

[83] DT 0000655-661, Audit Committee Meeting Minutes for March 6, 2018.

[84] TSYS080513, Quarterly Financial and Disclosure Consideration Checklist for Q1 2018 and TSYS079971, Quarterly Financial and Disclosure Consideration Checklist for Q2 2018.

[85] TSYS079903 at 05, Audit Committee Meeting Gray Book – Agenda, September 26, 2017; TSYS024643, Quarterly Financial and Disclosure Consideration Checklist for Q1 2018; TSYS079971, Quarterly Financial and Disclosure Consideration Checklist for Q2 2018.

**CONFIDENTIAL**

deduction" was "consistent with GAAP and proper internal controls."[86]  This is way off the mark.  Ms. Houserman's directions to her subordinates to record SST's bonus accrual without supporting documentation were in violation of GAAP and SOX because they overrode the Company's internal control processes and caused unauthorized transactions to be recorded. Further, Ms. Houserman was ultimately responsible for her own actions and cannot shift the blame to Mr. Christensen.

76. As discussed in the background section of this report, on December 8, 2017, Ms. Houserman instructed Mr. Christensen to record an additional amount to the SST bonus accrual for the month of November 2017 that was not supported by her executed 2018 Goal Sheet.[87]  Mr. Christensen indicated in a note on the adjusting manual journal entry that an amount of the accrual had been "removed per Lynn Housermann [sic] request."[88]  In subsequent emails, he also confirmed that Ms. Houserman had instructed him and his staff to "remove" the Call Handling reduction to the pre-tax profit component of the SST bonus accrual while never informing her staff that there was an executed goal sheet that conflicted with the journal entry amount.[89]  The removal of the amount caused Mr. Christensen and his staff accountant to record an overstated bonus accrual for November 2017 that was not supported by the appropriate supporting documentation, Ms. Houserman's signed Fiscal 2018 Goal Sheet.[90]

77. The disclosure, buried on the second to last page of the Q2 2018 Quarterly Financial and Disclosure Consideration Checklist that "SST's Q1 Disclosure noted an adjustment (increase) to the General and President Bonus accrual, as the SST President believed a reduction of $6.2M to SST's PBT noted on the goal sheet was in error," is insufficient, inaccurate and misleading.[91]  The Q1 2018 Quarterly Financial and Disclosure Consideration Checklist did not disclose any increase to the accrual.  Instead it merely noted Ms. Houserman's position that the reduction in PBT was an error.

---

[86] Goolsby Report at 6.
[87] Eichberger00308-311, Emails and attachments between Nicole Eichberger, Michael Porcelain, Jason Christensen, and Katy Shulman, November 2017 through March 2018.
[88] Eichberger00308 at 310, Emails and attachments between Nicole Eichberger, Michael Porcelain, Jason Christensen, and Katy Shulman, November 2017 through March 2018 and TSYS062726 at 727, Journal Entry and Supporting Documentation for Bonus Accrual, December 2017.
[89] TSYS024293, Emails among P. Steo and J. Christensen, February 2018.
[90] TSYS072045, Journal Entry and Supporting Documentation for Bonus Accrual, February 9, 2018.
[91] TSYS079971 at 75, Quarterly Financial and Disclosure Consideration Checklist for Q2 2018.

CONFIDENTIAL

78.   Included in its system of internal controls for financial reporting, Comtech had specific controls over the recording of manual journal entries.  Control 15.3 required that all journal entries with backup are created by a Staff Accountant or Financial Analyst and are "reviewed, approved, and posted by either the Director of Finance & Accounting or the VP of Finance."[92] The control steps required the control owner, the VP Finance or Director of Finance and Accounting, to review the journal entry supporting documentation to ensure that the entry is correct and is a supportable business transaction, and adheres to GAAP.  The control also required the control owner to "review(s) the detail support (including supporting schedules, reconciliations, email explanations of the entry) and follow(s) up with the creator of the journal entry with any questions or discrepancies" and "ensure(s) that the documented descriptions or analysis from which the JE was derived is appropriate."[93]  No documentation to support the amount of the manual journal entry existed, which constituted a control deficiency in December 2017.

79.   Ms. Houserman's instructions to remove the reduction to pre-tax profit in the calculation for the manual journal entry caused the entry to be recorded in an amount exceeding the supporting documentation, Ms. Houserman's Fiscal 2018 Goal Sheet, and deviated from the control step requiring that the journal entry be supported by proper supporting documentation.

80.   By instructing Mr. Christensen to record the manual journal entries in an amount not supported by her Fiscal 2018 Goal Sheet, Ms. Houserman overrode Control 15.3, causing it to be ineffective.  Ms. Houserman's override of internal controls and unethical behavior compromised Comtech's internal control environment and demonstrated Ms. Houserman's lack of commitment toward the establishment of an effective control environment for the organization for which she was responsible.

81.   Comtech Internal Audit's listing of deficiencies for fiscal year 2018 states the following regarding the deficiency regarding management override and addresses the related failure of SST Control 15.3:

> During Comtech Corporate's Q2 FY18 assessment of SST's monthly financial reporting package ("FRP"), the Director of Financial Operations observed that

---

[92] PwC000246, SST Control Sheet for fiscal year 2018, Description of Control 15.3.
[93] TSYS063294, SST FY18 Summary of Deficiencies and Remediation at tab "15.3 Journal Entries."

**CONFIDENTIAL**

> SST's non-equity incentive compensation accrual exceeded supporting documentation (the FY18 General and President Goal Sheet signed by Lynne Houserman, SST President) by approximately $225K. Upon further investigation of this discrepancy Corporate became aware that the SST President intentionally overrode company policies and procedures and inappropriately recorded non-equity incentive compensation. Additionally, it was determined the manual journal entry control owner, the VP of Finance, did not sufficiently question the appropriateness of the documentation he was given to support the incentive compensation entry.

Comtech Internal Audit determined that this deficiency rose to the level of significant deficiency.[94]

82.   Ms. Houserman's override of internal controls constituted a lack of an appropriate tone at the top of the SST business unit and compromised the control environment at Comtech. In addition, Mr. Christensen insufficiently questioned the documentation purportedly supporting Ms. Houserman's direction. Her actions resulted in an internal control deficiency in the Company's internal controls over financial reporting that rose to the level of, at a minimum, a significant deficiency. The deficiency was determined by both the Company and Deloitte to be "important enough to merit attention by those responsible for oversight of the registrant's financial reporting."[95]

### b.   Ms. Houserman's Actions Compromised the Company's Internal Control Environment by Disregarding Comtech's Standards of Business Conduct and Were Inappropriate.

83.   While Mr. Goolsby acknowledged that Ms. Houserman signed Comtech's Standards of Business Conduct in August 2017,[96] he appears to be implying that Comtech's Standards of Business Conduct did not apply to Ms. Houserman because of a supposedly "challenging environment."[97] Whether or not Ms. Houserman found the environment to be challenging did not relieve Ms. Houserman of her duties as the President of SST to comply with company policies that are critical to Comtech's control environment.

---

[94] PwC000142, FY 2018 SOX Summaries of Deficiencies and Remediation.
[95] SEC Final Rule, Definition of the Term Significant Deficiency, Release No. 33-8829, Effective September 10, 2007 and Regulation S-X Rule 1-02(a)(4).
[96] Goolsby Report at 21.
[97] *Id.* at 22.

CONFIDENTIAL

84. In August 2016 and 2017, Ms. Houserman participated in Comtech's SOBC training course. Upon completion of the training, Ms. Houserman read and certified that she would abide by the SOBC and other Company policies, including Policy #08-01-11.   Moreover, Ms. Houserman agreed to abide by the SOBC and acknowledged that any violation of the SOBC could lead to disciplinary action.[98]

85. The SOBC requires employees to perform their work with honesty, truthfulness, and integrity.[99]  Moreover, it requires every employee responsible for providing information used in the preparation of reports filed with the SEC to personally assure that such information is complete and accurate and reminds them that falsifying information is strictly prohibited.[100] Ms. Houserman had a fiduciary duty to comply with the SOBC.  Ms. Houserman's override of controls was inconsistent with Comtech's SOBC.

86. In addition to the SOBC, Comtech's HR & Employee Compensation Guidelines (referred to as Policy #08-01-11) document the terms, practices and policies of Comtech related to Human Resources and employee compensation.

87. The Accrual of Non-Equity Incentive Plan and Bonus Expense section of Policy #08-01-11 states that "Corporate and each subsidiary or group of subsidiaries should be accruing non-equity incentive and other bonus expense during the year equal to the aggregate of: (1) the estimated profit sharing pool award for all employees, other than the Subsidiary President or Corporate Executive Officer, and (2) the estimated incentive compensation for the Subsidiary President or Corporate Executive Officer based on the estimated probable level of achievement of the performance goals set in the ***applicable Goal Sheet***" (emphasis added).[101] Ms. Houseman's actions were inconsistent with this provision of Policy #08-01-11 by instructing the accounting staff to book an accrual in an amount not supported by her Fiscal 2018 Goal Sheet that she had executed and submitted to Mr. Kornberg.  Ms. Houserman also instructed Mr. Christensen to make the entry and provided him with the unsigned, unexecuted

---

[98] TSYS014507, Standards of Business Conduct Certification signed by Lynne Houserman, August 28, 2017.
[99] TSYS000502 at 505, Comtech Standards of Business Conduct, published July 2017.
[100] TSYS000502 at 513, Comtech Standards of Business Conduct, published July 2017.
[101] Eichberger00028 at 67, Comtech Telecommunications Corp. HR & Employee Compensation Guidelines.

CONFIDENTIAL

version of her Fiscal 2018 Goal Sheet and told him that it was still under revision when in fact she had signed the goal sheet.[102]

88. Ms. Houserman's actions were inconsistent with Comtech's Policy #08-01-11 and the Company's SOBC and caused Mr. Christensen and an SST Senior Financial Analyst to record the improper adjustment for November 2017. There is no evidence that Ms. Houserman requested permission to adjust the bonus accrual from Corporate Accounting, nor in her communications with management about the bonus did she inform them that she was causing an accrual to be entered that was inconsistent with the terms of the signed goal sheet. Specifically, the HR & Employee Compensation Guidelines (Policy #08-01-11) state the bonus pool "may be adjusted by Comtech's CEO or ECC, as applicable, at his or her discretion, for special or non-recurring items that were not in the original financial plan for the relevant fiscal year."[103]  As such, Ms. Houserman did not have the authority to make the change to the bonus accrual without proper approval.

89. I understand that Ms. Houserman alleges that the deduction was unfair and possibly even gender discrimination. The merits of those allegations, which I understand are contested and a subject of this litigation, have no bearing on my opinion of whether or not Ms. Houserman overrode controls. Whether she was the subject of gender discrimination would not change or excuse the fact that she inappropriately overrode the Company's internal controls when she manipulated the company's financial statements by causing the Company to accrue for her bonus in a manner that was inconsistent with her goal sheet and the directives of corporate management.

### c. Deloitte Properly Concluded Ms. Houserman's Override to Be a Significant Deficiency in Comtech's Internal Controls Over Financial Reporting.

90. Mr. Goolsby asserts that "Comtech attempted to push the harsh action taken against Houserman to Deloitte by ascribing the identification of the alleged overriding of internal controls and Significant Deficiency to Deloitte when, in fact, such identification was that of Comtech and Deloitte, as expected under auditing protocol, accepted the decision."[104]  Mr. Goolsby is incorrect with his assertion. First, it is appropriate for Comtech to inform its

---

[102] Deposition of Jason Christensen (Rough Draft Transcript), September 24, 2020, at 18.
[103] Eichberger00028 at 64, Comtech Telecommunications Corp. HR & Employee Compensation Guidelines.
[104] Goolsby Report at 52.

**CONFIDENTIAL**

auditors of a deficiency in internal controls and take remedial action based on that deficiency. Second, Deloitte was subject to PCAOB standards, evaluated the control deficiency and independently concluded that it rose to the level of a significant deficiency.

91.   During Deloitte's quarterly review and interim audit procedures which include fraud inquiries, Deloitte was informed by Mr. Porcelain that Ms. Houserman overrode Company policies and procedures and inappropriately recorded the non-equity incentive compensation of the business unit.[105]

92.   PCAOB standards establish requirements and provide direction that applies when an auditor is engaged to perform an audit of management's assessment of the effectiveness of internal control over financial reporting.[106]   In accordance with PCAOB Standards, Deloitte was required to conduct an independent review and evaluate each control deficiency to determine whether the deficiencies, individually or in combination, are material weaknesses.[107]

93.   At the March 6, 2018 Comtech Audit Committee meeting, Deloitte advised the Audit Committee that, "based on Deloitte's independent review, (i) Ms. Houserman's actions in connection with this intentional override constituted a lack of an appropriate 'tone at the top' of the SST business unit," (ii) that the SST Vice President of Finance "did not sufficiently question the appropriateness of documentation purportedly supporting the SST President's direction," and (iii) that "the intentional override and the insufficient questioning of the supporting documentation constitute[d] a significant deficiency in the Company's internal controls over financial reporting."[108]

94.   Deloitte is subject to PCAOB Standard AS2805, Management Representations, which states the following:

> If a representation made by management is contradicted by other audit
> evidence, the auditor should investigate the circumstances and consider the

---

[105] DT 0000655 at 659, Minutes of a Meeting of the Audit Committee of the Board of Directors for Comtech Telecommunications Corp., March 6, 2018, as contained within the Deloitte work papers. DT 0000371-378, Deloitte Fraud Inquiries of Michael Porcelain on February 20, 2018.
[106] PCAOB AS 2201, An Audit of Internal Control over Financial Reporting That Is Integrated with An Audit of Financial Statements.
[107] *Id.*
[108] DT 0000655 at 659-660, Minutes of a Meeting of the Audit Committee of the Board of Directors for Comtech Telecommunications Corp., March 6, 2018.

CONFIDENTIAL

> reliability of the representation made.  Based on the circumstances, the auditor should consider whether his or her reliance on management's representations relating to other aspects of the financial statements is appropriate and justified.[109]

95.  Mr. Sarno testified that[110]:

> *Q. What would be the reason that you would not talk to the persons who are allegedly involved in engaging in the control overrides? What would be one reason you wouldn't do that --*
>
> *Q. -- promptly after being told of the disclosure?*
>
> *A. Whether there was any concerns around the accuracy of that individual's accounts.*
>
> *Q. Could you explain that?*
>
> *A. If you didn't believe that one could rely on representations that an individual was making, then you may not be so inclined to speak to that individual.*

96.  Deloitte recommended that if the Company did not plan to take appropriate corrective action,

- a forensic investigation of the SST organization and actions taken by the President would need to be conducted to determine if any further intentional override of controls had occurred;

- there would be no reliance on Ms. Houserman's representation of the internal control environment at SST business unit; and

- a significant and expensive amount of additional audit work would be needed in order to render an opinion on the Company's financial statements and internal control over financial reporting.[111]

97.  Based on my experience and facts presented, Deloitte's recommendations as outlined above were appropriate.  In my experience, it is a significant finding, not made lightly, when an auditor determines that an executive of a public company acts in such a way that their representations can no longer be relied upon.  In those cases, an auditor would typically expect that significant remedial action be taken which can include either a change or modification of the employee's responsibilities, termination, demotion, and/or

---

[109] PCAOB AS 2805, Management Representations.
[110] Deposition of John Sarno, July 22, 2020, at 84-85.
[111] DT 0000655 at 660, Minutes of a Meeting of the Audit Committee of the Board of Directors for Comtech Telecommunications Corp., March 6, 2018.

CONFIDENTIAL

implementation of enhanced internal controls.  If such remedial actions are not undertaken for some period of time, one can expect that the outside auditor would include enhanced audit procedures that would likely require significant increases in time and expense associated with the company's audits.

98. Deloitte further reported that the firm would have to perform certain additional audit procedures for any period during which Ms. Houserman led SST to ensure that it could rely on the Company's internal control over financial reporting.[112]

99. Deloitte's reporting of the issues surrounding Ms. Houserman's actions was consistent with its obligations as external auditor under PCAOB requirements.

100. The Goolsby Report provides a hypothetical scenario posed to "confirm" his "opinion that Houserman's actions of allegedly overriding of internal controls was not an issue at all and did not rise to the level of even a Deficiency—and certainly not a Significant Deficiency."[113] The Goolsby Report states, "Sarno testified that, if Houserman had believed that the Fiscal 2018 Goal Sheet contained an error, and if Houserman had been requesting resolution of this issue from management without any response until Kornberg stated on February 13, 2018 that the Goal Sheet was correct, it would not have been a control Deficiency for her to instruct Christensen to accrue for the higher bonus amount."[114]

101. This hypothetical does not address the actual fact pattern of: 1) Ms. Houserman had a signed goal sheet that enumerated the bonus she was meant to be paid but did not provide that to Mr. Christensen, 2) Ms. Houserman instructed Mr. Christensen to record an accrual amount greater than what was in the executed goal sheet, and 3) Corporate was not informed that an additional journal entry to increase the bonus accrual had been made, to which Mr. Sarno testified.[115]

## VI.   CONCLUSION

102. Comtech is responsible for developing and maintaining a system of internal controls over financial reporting that would prevent the financial statements from misleading the owners,

[112] *Id.*
[113] Goolsby Report at 32.
[114] *Id.*
[115] Deposition of John Sarno, July 22, 2020, at 54-55.

**CONFIDENTIAL**

creditors, investors, and other parties as well as to prevent misappropriation of assets.  In my opinion, Ms. Houserman overrode certain internal controls related to Comtech's accrual processes in fiscal year 2018.  Because this deficiency was caused by management override, the potential for misappropriation of assets and overall misstatement to the financial statements was greatly increased.

## VII.  SIGNATURE AND RIGHT TO MODIFY

103. My opinions are based upon information available to me as of the date of this report.  It is possible that additional information may affect my opinions herein.  I reserve the right, in the event further information becomes available, to modify or supplement my analysis and opinions.

*****

Signed this October 2, 2020 in New Jersey.

_____

Elaine Lehnert, CPA, CFF

Exhibit A





485 Lexington Avenue, 10th Floor
New York, NY 10017

+1.732.766.4409 Mobile

elaine.lehnert@ankura.com

**EDUCATION**
BS, Accounting, Rider University

**CERTIFICATIONS**
Certified Public Accountant

Certified in Financial Forensics

**AFFILIATIONS**
American Institute of Certified
Public Accountants

New Jersey Society of Certified
Public Accountants

Board Member of the Society of
Insurance Financial
Management (SIFM)

Chair Women of SIFM

Institute of Internal Auditors,
Member

## ELAINE LEHNERT
### Managing Director

## Internal Control Assessment Expertise

Elaine Lehnert is a Managing Director at Ankura with more than 25 years of experience in internal control assessments, financial accounting, and reporting.

She performs assessments of internal control over financial reporting based on the criteria established in the COSO framework and/or plans of remediation across multiple industries, including in connection with forensic accounting investigations and FCPA monitorships.

In addition, she advises on financial reporting issues specific to insurance and reinsurance companies and has served as a consulting and/or testifying expert on various matters involving insurance and reinsurance companies.

She joined Ankura in 2016 from FTI Consulting where she was a managing director in the forensic and litigation services practice based out of New York and, before that, at Veris Consulting, where she specialized on matters involving insurance and reinsurance companies.

Before joining Veris Consulting, she was a member of the staff of the Accounting Standards Division of the AICPA.  At the AICPA, she was responsible for the development of the audit and accounting guides for insurance companies and was involved in other GAAP standard-setting activities.  She also coordinated with industry groups, including the National Association of Insurance Commissioners and state insurance regulators.

She started her career as an auditor with a Big Four public accounting firm. She worked on financial statement audits and related assessments of internal control over financial reporting for entities across multiple industries and participated in the firm's internal insurance training program.

Elaine's professional experience includes:

- Internal Controls Whistleblower Action - Retained by counsel to provide an expert opinion in connection with the allegations brought by a whistleblower action. Opinion included the mechanics and purpose of internal controls over financial reporting and the appropriateness of the actions taken by the

**ELAINE LEHNERT**

plaintiff in reporting the violations of the company's internal control environment.

- Independent Fiduciary Review - Retained by counsel on behalf of a board of directors to perform an independent fiduciary review of a pension fund's assets, liabilities, system of internal controls and the related financial reporting as a result of a whistleblower action.

- Assessment of Remediation of Internal Controls

  o Retained by counsel on behalf of a special committee of the board of directors of a healthcare company to assess internal controls that the company implemented in the aftermath of restating its financial statements.

  o Retained by counsel on behalf of a special committee of the board of directors of a pharmaceutical company to assess internal controls that the company implemented in the aftermath restating its financial statements

- Outsourced Internal Audit Provider -  Led a team that served as the outsource provider for the internal audit function of a mid-sized company. On an annual basis, Elaine developed and executed the annual audit and reported directly to the audit committee. Further, Elaine served as the sounding board for management in its assessment and development of internal controls throughout the company.

- Assessment of Internal Controls in the Aftermath of Fraud - Retained by counsel on behalf of an audit committee of a global publicly traded company to assess the internal controls designed to ensure safeguarding of certain assets/cash disbursements that were the center of fraudulent transactions originating out of its international subsidiary.

- Sarbanes-Oxley Section 404 Assistance - Provided Sarbanes-Oxley assistance services to the management team at a publicly traded car rental and equipment leasing company. Assistance included the assessment of company prepared risk and control documentation of 12 key processes and reviewing and evaluating documentation against COSO.

- Internal Audit Co-Sourcing - Led a team supplementing the internal audit department of a publicly traded international property and casualty insurance company. Elaine partnered with the company's internal audit department to ensure its annual audit plan was fully executed by year-end as additional capacity was required due to unforeseen staffing issues.

- Assistance to Chief Risk Officer - Provided assistance to the chief risk officer of an international underwriter of specialty insurance and reinsurance products in areas of the property and casualty market. Projects included assistance with Enterprise Risk Management projects such as developing a risk taxonomy, developing risk registers which identified risks of the organization, assistance with the preparation of the quarterly presentations to the board of directors and performing an assessment of the company's OFAC Sanctions Compliance Program.

- FCPA Monitorship Internal Control Review - Provided support to a team of forensic accountants by conducting an internal control assessment in conjunction with several Department of Justice FCPA monitorships of global corporations.



Exhibit B

**Exhibit B**

Materials Relied Upon

## I.    Court Filings

TeleCommunications Systems, Inc. v Lynne Houserman Complaint (March 6, 2019)

TeleCommunications Systems, Inc. v Lynne Houserman Defendant's Answer to Complaint and Affirmative Defenses (May 1, 2019)

Lynne Houserman v Comtech Telecommunications Complaint (May 1, 2019)

Lynne Houserman v Comtech Telecommunications Defendants' Answer and Affirmative Defenses to Defendants' Counterclaims (May 1, 2019)

Lynne Houserman v Comtech Telecommunications First Amended Complaint (August 10, 2020)

Lynne Houserman v Comtech Telecommunications Defendants' Answer to Complaint (August 24, 2020)

## II.    SEC Filings

Comtech Telecommunications Corporation, July 31, 2019 Form 10-K

Comtech Telecommunications Corporation, July 31, 2018 Form 10-K

Comtech Telecommunications Corporation, July 31, 2017 Form 10-K

## III.    Literature and Regulations

15 U.S.C. § 7262(a)

AICPA, Management Override of Internal Control: The Achilles' Heel of Fraud Prevention § A (2016)

Committee of Sponsoring Organizations of the Treadway Commission: About Us, https://www.coso.org/s/aboutus.aspx, accessed September 23, 2020

Internal Control—Integrated Framework issued by Committee of Sponsoring Organizations of the Treadway Commission (September 1992, amended May 1994)

Internal Control—Integrated Framework issued by Committee of Sponsoring Organizations of the Treadway Commission (May 2013)

Managing the Business Risk of Fraud: A Practical Guide sponsored by The Institute of Internal Auditors, The American Institute of Certified Public Accountants and the Association of Certified Fraud Examiners

PCAOB Auditing Standard 1305, Communications About Control Deficiencies in an Audit of Financial Statements

PCAOB Auditing Standard No. 2201, An Audit of Internal Control Over Financial Reporting that

is Integrated with an Audit of Financial Statements

PCAOB Auditing Standard No. 2301, The Auditor's Responses to the Risks of Material Misstatement

PCAOB Auditing Standing No. 2805, Management Representations

Regulation S-X Rule 1-02(a)(4)

SEC Final Rule, Commission Guidance Regarding Management's Report on Internal Control Over Financial Reporting Under Section 13(a) or 15(d) of the Securities Exchange Act of 1934, Release No. 33-8810, Effective June 27, 2007

SEC Final Rule, Definition of the Term Significant Deficiency, Release No. 33-8829, Effective September 10, 2007

SEC Final Rule, Management's Report on Internal Control Over Financial Reporting and Certification and Disclosure in Exchange Act Periodic Reports, Release Nos. 33-8238, August 14, 2003

## IV. Depositions

Lynne Houserman Deposition, November 21, 2019 and Exhibits

John Sarno Deposition, July 22, 2020 and Exhibits

Nicole Eichberger Deposition, July 23, 2020 and Exhibits

Michael Porcelain Deposition, July 29, 2020 and Exhibits

Fred Kornberg Deposition, July 30, 2020 and Exhibits (Vol. I)

Fred Kornberg Deposition, September 10, 2020 and Exhibits (Vol. II)

Tricia Sheehan Deposition, August 13, 2020 and Exhibits

Deposition of Jason Christensen (Rough Draft Transcript), September 24, 2020 and Exhibits

## V. Expert Report

Expert Report of Gary B. Goolsby, August 14, 2020, with Exhibits/Appendices and Backup materials

## VI. Bates Stamped Documents

DT 0000371 - DT 0000378

DT 0000439

DT 0000566 - DT 0000594

DT 0000639 - DT 0000650

DT 0000655 - DT 0000684

DT 0000742 - DT 0000811

DT 0000816 - DT 0000830

DT 0000834 - DT 0000847

DT 0000851 - DT 0000866

DT 0000868 - DT 0000937

DT 0000966 - DT 0000971

DT 0000973 - DT 0001022

DT 0001035 - DT 0001047

DT 0001051 - DT 0001080

DT 0001083 - DT 0001106

DT 0001108 - DT 0001156

DT 0001161 - DT 0001164

Eichberger00020

Eichberger00028 - Eichberger00072

Eichberger00208 - Eichberger00210

Eichberger00216 - Eichberger00217

Eichberger00297 - Eichberger00301

Eichberger00308 - Eichberger00311

Eichberger00603 - Eichberger00606

Eichberger00659 - Eichberger00660

Eichberger00663 - Eichberger00664

Eichberger00806 - Eichberger01016

HOUSERMAN0000756 - HOUSERMAN0000757

PwC000142

PwC000246

TSYS000502 - TSYS000525

TSYS012864 - TSYS012865

TSYS013394 - TSYS013395

TSYS014381 - TSYS014384

TSYS014462 - TSYS014470

TSYS014507 - TSYS014508

TSYS016507 - TSYS016696

TSYS022589 - TSYS022590

TSYS023976

TSYS024293 - TSYS024298

TSYS024642 - TSYS024648

TSYS024656 - TSYS024657

TSYS024754 - TSYS024755

TSYS024900

TSYS025267

TSYS025272 - TSYS025273

TSYS041276 - TSYS041277

TSYS048553 - TSYS048555

TSYS049438 - TSYS049439

TSYS049831 - TSYS049832

TSYS053469

TSYS057848 - TSYS057850

TSYS057872 - TSYS057873

TSYS062726 - TSYS062729

TSYS063294

TSYS070070 - TSYS070071

TSYS070606

TSYS070715 - TSYS070716

TSYS070730 - TSYS070731

TSYS070740 - TSYS070741

TSYS070806 - TSYS070807

TSYS072040 - TSYS072046

TSYS072246 - TSYS072247

TSYS072265 - TSYS072268

TSYS074608 - TSYS074610

TSYS074622 - TSYS074624

TSYS078873

TSYS079903 - TSYS079961

TSYS079968 - TSYS079976

TSYS079983 - TSYS080121

TSYS080512 - TSYS080547

TSYS085561 - TSYS085644