HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LYNNE HOUSERMAN, | No. 2:19-cv-00644-RAJ |
| Plaintiff, | ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| COMTECH TELECOMMUNICATIONS CORPORATION, FRED KORNBERG, AND MICHAEL D. PORCELAIN | |
| Defendants. | |

## I.   INTRODUCTION

This matter comes before the Court on Defendants' Motion for Summary Judgment. Dkt. # 111. Plaintiff opposes the motion. Dkt. # 135. After reviewing the parties' briefs, the relevant case law, and the record, the Court finds that oral argument is unnecessary. For the reasons below, the Court **DENIES in part** and **GRANTS in part** Defendants' motion.

## II.   BACKGROUND

Defendant Comtech TeleCommunications Corporation ("Comtech") is a leading provider of advanced communication solutions for governmental and commercial

ORDER – 1

1 customers. Dkt. # 111 at 6. Plaintiff Lynne Houserman ("Plaintiff" or "Ms.
2 Houserman") had been employed by Comtech as the president of its Safety and Security
3 Technologies Group ("SST"). Dkt. # 76 ¶¶ 3.2-4.2. She assumed that role on February
4 27, 2016, following Comtech's acquisition of her prior employer, TeleCommunications
5 Systems, Inc. ("TSYS"). *Id.* At TSYS, Plaintiff oversaw the company's call handling
6 and call routing businesses. Dkt. # 111 at 6-7. Between April 27 and August 13, 2016,
7 she took maternity leave. Dkt. # 76 ¶ 4.7. During this period, Comtech moved SST's
8 call handling business responsibilities to another division run by Jay Whitehurst. *Id.*
9 ¶ 4.8.

10 At Comtech, bonus compensation was awarded based on performance. Dkt. # 135
11 at 7. A division president's bonus and how much money would be pooled for division
12 employee bonuses was dependent upon the division's performance in relation to its
13 performance goals. *Id.* In fiscal year 2017, SST's call handling business projected a loss.
14 *Id.* Because that business was being transferred to Mr. Whitehurst's division, that
15 projected loss would likely hurt his division's performance and reduce compensation. To
16 offset that projected loss for bonus calculations, Plaintiff agreed to reduce her "pre-tax
17 profit" achievement by $6.297 million. Dkt. # 76 ¶ 4.9. Mr. Whitehurst's pre-tax profit
18 achievement would be increased by $6.297 million. *Id.* If the profit before tax loss was
19 less than $6.297 million, Mr. Whitehurst's pre-tax profit achievement number would be
20 credited for the lesser amount. *Id.* In September 2016, Plaintiff entered into an
21 agreement with Mr. Whitehurst and Chief Financial Officer Michael D. Porcelain
22 regarding this exchange. *Id.*

23 Plaintiff alleges that this agreement was limited to fiscal year 2017, beginning
24 August 1, 2016 and ending July 31, 2017. *Id.* ¶¶ 4.9, 4.11. Plaintiff claims that she did
25 not agree to do this for future years. *Id.* ¶ 4.12 (She "did not come to any agreement
26 regarding the effect of the transfer of [her] call handling responsibilities on future pre-tax
27 profit goals for FY 2018 or subsequent years.").

28 ORDER – 2

In September 2017, the beginning of fiscal year 2018, Plaintiff received and signed the FY 2018 Goal Sheet. *Id.* ¶ 4.13. Goal Sheets are used to set performance goals for the year for each group. Dkt. # 135 at 7. The FY 2018 Goal Sheet included the $6.297 million reduction from her division's pre-tax profit achievement from the prior year's goal sheet. Dkt. # 76 ¶¶ 4.13-4.14. Plaintiff alleges that she did not notice that the same reduction had been applied before signing the form. *Id.* ¶ 4.14. The FY 2018 Goal Sheet also increased the amount her division would need to achieve for bonus purposes. *Id.* ¶ 4.15. The 2018 pre-tax profit goal was $17,500,000 (with a $6.297 million reduction), compared to the 2017 pre-tax profit goal of $6,000,000 (with a $6.297 million reduction). *Id.* ¶¶ 4.10, 4.15.

On November 9, 2017, SST's finance director, Jason Christensen, brought this to Plaintiff's attention. *Id.* at 4.16. At the time, Mr. Christensen was calculating the amount of funds to accrue for year-end bonuses in the monthly forecast, as required by Comtech's policy on bonuses. *Id.* Plaintiff claims that upon learning of the 6.297 million reduction on her Goal Sheet, she assumed it was a mistake. Dkt. # 135 at 8. That same day, she emailed Fred Kornberg and Michael Porcelain. *Id.*; Dkt. # 140-1 at 64. She noted that "some language specific to FY2017 was carried over onto [her] 2018 Goal Sheet…" Dkt. 140-1 at 64. She explained that "[t]here is no Call Handling loss of $6,297 [sic] forecasted in any division…so my assumption is that this is an error in the paperwork." *Id.* She said that she believed the $6.297 million reduction in fiscal year 2018 was a carryover from the previous year's one-time agreement between the then-CEO, Jay Whitehurst, and herself. *Id.*

She emailed Mr. Kornberg again on November 10 and November 28, 2017, to inquire about what she referred to as an "error" in her goal sheet. *Id.* On November 28, 2017, Mr. Kornberg responded that he would get back to her "as soon as I can after my Shareholder mtg [sic] and after I get the facts as to what Stan S agreed to with you and Jay." Dkt. # 119-36 at 3. Plaintiff alleges that she documented her concerns about the

ORDER – 3

reduction in her Q1 and Q2 Financial and Disclosure Consideration Checklists and her December 2017 and January 2018 Month President Reports. Dkt. # 76 ¶ 4.19. Without an answer from Mr. Kornberg, Plaintiff says that she instructed Mr. Christensen to accrue bonus expenses based on the division's pre-tax profit goal without the $6.297 million reduction. *Id.* ¶ 4.19.

On a February 13, 2018 telephone call with Michael Porcelain, Plaintiff was told by Mr. Porcelain that he did not believe the reduction had been an error. *Id.* ¶ 4.20. He told her that the reduction was likely intended to be a "call-up" to $23,797,000 for FY 2018 from the goal of $17,500,000 or that it was extended to cover the loss in the call-handling business from the previous year. *Id.* Plaintiff argued that her division's pre-tax profit goal was already 9 percent higher than her division's pre-tax budget of $16,000,000. *Id.* ¶ 4.21. She contended that a "call up" with the reduction was a 48 percent increase from her division's budget pre-tax profit goal of $16,000,000. *Id.* Plaintiff noted that none of Comtech's other presidents, who were all male, had their pre-tax profit achievement goal increased above their division's forecasted pre-tax profit to the same extent for FY 2018. *Id.* ¶ 4.17.

Moreover, Plaintiff claimed that, though she agreed to a $6.297 million reduction for fiscal year 2017, she had never agreed to a reduction for fiscal year 2018 or any year thereafter. *Id.* ¶ 4.23. She argued that such a reduction beyond 2017 would be "inappropriate" because the call handling business's financial performance was better than expected in 2017, and the projected losses for fiscal year 2018 were significantly lower than $6.297 million. *Id.* at 4.23. She told Mr. Porcelain that she believed she was not being treated fairly compared to the other division presidents, all of whom were male, who "were not required to achieve the same level of pre-tax profit budget goals in order to receive bonus compensation." *Id.* ¶ 4.24. Mr. Porcelain told Plaintiff to be "careful what she wished for" in pursuing this issue because it could lead Comtech to claw back portions of her past bonuses. *Id.* ¶ 4.25.

ORDER – 4

The same day, Plaintiff followed up again with Mr. Kornberg. Dkt. # 119-36 at 2. In her email, she stated the following:

> In November, I corrected SST's bonus accrual to match our profit sharing bonus pool assuming this error would be corrected. I am being told by Mike Bondi to reverse this accrual for the quarterly close for Q2. This has been outstanding for 3 months without resolution. I am requesting that you please correct this error in my divisions [sic] bonus pool calculation for 2018. If I should be addressing this with the . . . compensation committee instead, please let me know.
>
> *Id.*

Mr. Kornberg replied that day, instructing her that "no correction was to be done until we evaluated the situation. So your November correction was not authorized. I told you then to be patient. You need to reverse your unilateral (which was wrong and unauthorized) decision before the close of the Q2." *Id.* Plaintiff responded to the email requesting a "commitment as to when this would be addressed as this has been outstanding for 3 months." *Id.* Mr. Kornberg replied "I told you to be patient. We intend to do SST next. There are many items to be considered." *Id.*

Two days later, Mr. Porcelain called Plaintiff and told her "not to take anything he had said . . . as factual" but that she should document her concerns for compliance purposes. *Id.* ¶ 4.26. Plaintiff emailed Mr. Porcelain her concerns regarding the pre-tax profit reduction as well as what she viewed as Mr. Porcelain's "threats of retaliation" on February 18, 2018. *Id.* She did not receive a response. *Id.* Plaintiff then forwarded her concerns to Mr. Kornberg on February 27, 2018. *Id.*

On March 19, 2018, Mr. Kornberg informed Plaintiff that Comtech had assigned Nicole Eichberger, an attorney from Proskauer Rose LLP, to investigate her allegations of sex discrimination and Mr. Porcelain's threats of retaliation. *Id.* ¶ 4.27. On April 2, 2018, Plaintiff participated in a conference call with Ms. Eichberger and Mr. Kornberg to discuss the investigation. *Id.* ¶ 4.29. Ms. Eichberger described the nature of her investigation and her conclusion that Plaintiff's allegations were unsubstantiated. *Id.* Ms. Eichberger also informed Plaintiff that Comtech intended to reduce her pre-tax profit

ORDER – 5

achievement by $6.297 million each year for five years. *Id.* Plaintiff alleged this was the first time she was told that the reduction was intended to apply for five years. *Id.*

Mr. Porcelain terminated Ms. Houserman's employment immediately thereafter. *Id.* ¶ 4.30. In Ms. Houserman's termination letter, Comtech stated that she was terminated for "good cause" because she "willfully violated and willfully directed and caused [her] subordinates to violate material Company policies and procedures by directing that SST's accrual of bonus compensation be repeatedly recorded in a manner that was not in accordance with the governing 2018 Goal Sheet." Dkt # 119-35 at 2.

Plaintiff sued Defendants Comtech Telecommunications Corporation, Fred Kornberg, and Michael D. Porcelain (collectively "Defendants") on May 1, 2019. In her amended complaint, she alleges breach of contract, unlawful wage withholding, discrimination, retaliation, and wrongful discharge in violation of public policy. Dkt. # 76 ¶¶ 5.1-9.6. She contends that the reasons Comtech provided for her termination were "merely pretextual for Comtech's discriminatory, gender-based acts." *Id.*

Defendants, however, contend that Ms. Houserman was properly terminated for cause because she violated Comtech's internal control policies, Standards of Business Conduct, as well as specific instructions from corporate headquarters "all in an effort to increase the accrual for her own bonus and then to cover up her actions after she was caught." Dkt. # 111 at 6.

On December 4, 2020, the Court granted Plaintiff's motion to consolidate cases filed in the related case *Telecommunication Systems, Inc. v. Houserman, et al.*, No. 2:19-cv-00336-RAJ (W.D. Wash. filed March 6, 2020). Dkt. # 143. TSYS sued Plaintiff and her new employer, Motorola Solutions, Inc. on March 6, 2019. *Telecommunication Systems, Inc. v. Houserman, et al.*, No. 2:19-cv-00336-RAJ (W.D. Wash. filed March 6, 2020) (Dkt. # 1). Because Defendants' instant motion for summary judgment applies only to Ms. Houserman's claims against them, the Court will not address TSYS's claims against Ms. Houserman here.

ORDER – 6

## III.  LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

However, the nonmoving party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). Uncorroborated allegations and "self-serving testimony" will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *T.W. Elec. Serv. v. Pac Elec. Contractors Ass'n*, 809 F. 2d 626, 630 (9th Cir. 1987). The court need not, and will not, "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also White v. McDonnel-Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990) (explaining that the court need not "speculate on which portion of the record the nonmoving party relies, nor is it obliged to wade through and search the entire record for some specific facts that might support the nonmoving party's claim"). "[T]he mere existence of *some*

ORDER – 7

alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis original).

## IV.   DISCUSSION
### A.   Breach of Contract Claim

In Washington, to establish a breach of contract claim, a plaintiff must prove (1) the existence of a contract, (2) a material breach of that contract, and (3) resulting damage. *St. John Med. Ctr. v. State ex rel. Dep't of Soc. & Health Servs.*, 38 P.3d 383, 390 (Wash. Ct. App. 2002). A breach of contract claim must point to a provision of the contract that was breached. *See, e.g.*, *Elliot Bay Seafoods, Inc. v. Port of Seattle*, 98 P.3d 491 (Wash. Ct. App. 2004); *BP W. Coast Prod., LLC v. Shalabi*, No. 2:11-cv-01341-MJP, 2012 WL 441155, at *4 (W.D. Wash. Feb. 10, 2012). The parties here do not dispute the existence of an employment contract between Comtech and Ms. Houserman set forth in her offer letter.

Plaintiff alleges that Comtech breached the contract by terminating her without "cause" as that term is defined in the 2017 Comtech employment agreement, and thereby depriving her of separation benefits to which she was entitled in the agreement. Dkt. # 76 at 12. Defendants allege that Comtech rightfully terminated Plaintiff for cause and is therefore entitled to summary judgment on this claim. Dkt. # 111 at 17. "Cause" for termination is defined in Plaintiff's offer letter as "willful misconduct (including a failure to act), willful neglect, willful malfeasance . . . or 'willful breach' of this letter agreement (other than inadvertent or nonrecurring breach cured and corrected by you within 30 days after notice thereof by the Company." Dkt. 119-7 at 3. The letter notes that "'[w]illful breach' shall include, but not be limited to, insubordination, serious dereliction of fiduciary obligation . . . a violation of any material Company rule, regulation or policy, or a serious violation of any law governing the workplace." *Id.*

Defendants note that Plaintiff relies on a "good faith" exception set forth in the

ORDER – 8

offer letter, by which "no act or failure to act shall be considered 'willful' if you reasonably believed in good faith that such act or failure to act was in the best interests of the Company and its affiliates." Dkt. # 111 at 18 (citing Dkt. # 119-7 at 3). They assert, however, that this reliance is misplaced because Plaintiff's good faith belief was unreasonable. *Id.* at 19. They allege that she "misled corporate" about her accrual without the reduction. *Id.* And they contend that she could not have reasonably believed that her violations of company policy were in the "best interests of the company." *Id.*

In support of their misconduct allegations, Defendants point to an independent assessment of Plaintiff's bonus accrual conduct performed by Deloitte, Comtech's independent auditor. Dkt. # 111 at 15. During a Board Audit Committee meeting, the Deloitte representatives informed the Committee that Plaintiff had "intentionally overrode Company policies and procedures and inappropriately recorded the non-equity incentive compensation of the business unit." Dkt. # 119-38 at 4. Mr. Porcelain concluded that "it was clear that Lynne Houserman, as President of SST, did not follow Company policies." *Id.* Deloitte advised the Committee that Plaintiff's actions "constituted a lack of an appropriate tone at the top of the SST business unit . . . and the intentional override and insufficient questioning of supporting documentation constitutes a significant deficiency in the Company's internal controls over financial reporting." *Id.* at 4-5.

Plaintiff does not, however, deny her conduct with respect to bonus accrual. Rather, she claims that her conduct was based on her good faith belief that the reduction in her pre-tax profit on her goal sheet was an error, erroneously carried over from the previous year's goal sheet. Dkt. # 76 ¶ 7.20. Plaintiff notes that the updated forecasted loss for FY 2018 for the call handling business was significantly less than $6.297 million that had originally been forecasted. *Id.* ¶ 7.8. Given this updated forecasted loss, the reduction of this same amount would seem to support Plaintiff's view that it was indeed an error. The Vice President of Finance for SST, Jason Christensen, shared Ms.

ORDER – 9

Houserman's surprise at the reduction, stating that it seemed "insane" and unfair, supporting reasonability of her view that it was an error. Dkt. # 135 at 5.

Furthermore, as noted above, when the reduction on her goal sheet was brought to her attention, she emailed the CEO to address it immediately. Indeed, she reached out multiple times to clarify the issue. Comtech's accounting expert agreed that Plaintiff's approach in addressing a perceived error in a goal sheet by informing the CEO and accruing for the amount she believed was correct could be a reasonable one. Dkt. 140-4 at 64. Plaintiff's actions undermine Defendants' allegation that she tried to mislead corporate "to increase the accrual for her own bonus" and then proceeded to "cover up her actions after she was caught." Dkt. # 111 at 6.

Plaintiff's belief that the $6.297 million reduction applied only to one year is supported by the former CEO of Comtech between February 2015 and September 2016—the period in which the call-handling business was transferred from Ms. Houserman's division to Mr. Whitehurst's division. Dkt. 140-1 ¶¶ 2-3. In his deposition, former CEO Dr. Stanton Sloane noted that he had discussed the projected call handling losses with Ms. Houserman and Mr. Whitehurst and how it would negatively affect Mr. Whitehurst's business group's bonuses in fiscal year 2017. Dkt. 140-1 ¶ 9. Dr. Sloane noted that "[o]ur discussions in this regard were limited to FY17, and I have no recollection of discussing any continuing call handling bonus implications beyond FY17." *Id.* He stated that, in his view, "any decision regarding a multiyear impact of that nature would have been documented. Moreover, I do not believe any such multiyear impact would be appropriate." *Id.* Dr. Sloane also said that Ms. Houserman did not mislead anyone about her business during the acquisition, challenging another justification of the reduction proffered by Mr. Porcelain. Dkt. # 135 at 16-17; Dkt. # 140-1 ¶ 2.

The Court finds that Plaintiff's belief that the reduction was an error is not necessarily unreasonable as a matter of law. The Court also finds that whether Plaintiff's conduct was in the best interests of the company is a factual question for a jury. If, after

ORDER – 10

weighing the evidence, a jury were to conclude that Plaintiff reasonably believed in good faith that the reduction was an error, then her conduct disregarding such an error in accrual could be viewed as beneficial to the company. Indeed, Plaintiff contends that she believed it was in Comtech's best interest not to include the reduction, which she believed to be an error, in the SST group's accruals. Dkt. # 135 at 19. The Court finds that genuine issues of material fact preclude summary judgment on the breach of contract claim.

### B. Wage Rebate Act Claim

Under the Washington Wage Rebate Act ("WRA"), "any employer or officer, vice principal or agent of any employer" is liable when it "[w]illfully and with intent to deprive the employee of any part of his or her wages, shall pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract." RCW 49.52.050. Washington case law has established that willfulness may be negated if a "bona fide" dispute existed between the employer and employee over the payment of wages. *Morgan v. Kingen*, 210 P.3d 995, 998 (Wash. 2009), *as corrected* (Nov. 9, 2009).

Plaintiff alleges that Defendants violated the WRA by willfully withholding wages from her. Dkt. # 76 at 13. Defendants argue that Plaintiff's claim fails because "the record indisputably shows Comtech withheld these payments because of her termination for cause and a bona fide, reasonably held belief that it was entitled to terminate her." Dkt. # 111 at 20. However, the assertion that Plaintiff was terminated for cause is, as noted above, a factual question for the jury to consider. The assertion that a bona fide dispute defeats the claim also raises factual questions for a jury to evaluate. *See Chelan Cty. Deputy Sheriffs' Ass'n v. Chelan Cty.*, 745 P.2d 1, 11 (Wash. 1987) (holding "[i]t is a question of fact if there is a bona fide dispute").

### C. Discrimination Claim

Under the Washington Law Against Discrimination ("WLAD"), it is an unfair

ORDER – 11

practice for an employer to discriminate against any person in compensation or in other terms or conditions of employment because of sex. RCW 49.60.180(3). The elements required to establish a prima facie case of discrimination are the same under both federal and state law. *Garcia v. City of Everett*, 2015 WL 1759208, at *4 (W.D. Wash. Apr. 17, 2015), *aff'd,* 728 F. App'x 624 (9th Cir. 2018). A plaintiff must establish the following elements: (1) she belonged to a protected class; (2) she was performing her job in a satisfactory manner; (3) she was subjected to an adverse employment action; and (4) similarly situated employees not in her protected class received more favorable treatment. *Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 818 (9th Cir. 2002).

"In responding to a summary judgment motion . . . a plaintiff may produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the defendant's decision, or alternatively may establish a prima facie case under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1037 (9th Cir. 2005). The Ninth Circuit has held that "[t]he requisite degree of proof necessary to establish a prima facie case for Title VII . . . on summary judgment is *minimal* and does not even need to rise to the level of a preponderance of the evidence." *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 659 (9th Cir. 2002), *as amended* (July 18, 2002).

Plaintiff alleges that Defendants discriminated against her, the only female president at Comtech, on the basis of her gender in violation of the WLAD by

> (1) applying the $6.297 million adjustment to her FY 2018 Goal Sheet where there was no legitimate business reason to do so, resulting in Ms. Houserman's pre-tax profit bonus goal being much more difficult to achieve than the pre-tax bonus goals of the other male presidents;
>
> (2) failing to respond to her repeated inquiries regarding whether that adjustment was an error, causing her to direct her division to accrue for bonuses based on her good faith belief that the adjustment would ultimately be removed (when none of the other presidents (all male) were subject to

ORDER – 12

similar non-responsiveness or left with such uncertainty about the bonus accruals for their divisions);

(3) failing to implement Ms. Houserman's FY 2018 salary increase (when, on information and belief, Comtech properly processed and paid all other presidents (all male) their salary increases); and

(4) wrongfully terminating Ms. Houserman for cause (whereas SST's male finance director, who was also involved in the bonus reserves, was neither disciplined nor terminated, let alone for cause).

Dkt. # 76 ¶ 7.24.

The parties here do not dispute that Plaintiff is a member of a protected class and that some adverse actions were taken, at least with respect to her termination and compensation. Dkt. # 111 at 23. Plaintiff argues that the direct evidence of discrimination precludes summary judgment. Dkt. # 135 at 23. Direct evidence of animus "creates a triable issue as to [defendants'] motive in [taking adverse action] even if the evidence is not substantial." *Dominguez-Curry*, 424 F.3d at 1038 (internal citation and quotations omitted). "Direct evidence typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer." *Id.* Stereotypes based on sex "can be evidence of sex discrimination, especially when linked to the employment decision." *Lindahl v. Air France*, 930 F.2d 1434, 1439 (9th Cir. 1991). As the Ninth Circuit has held repeatedly, "a single discriminatory comment by a plaintiff's supervisor or decisionmaker is sufficient to preclude summary judgment for the employer." *Dominguez-Curry*, 424 F.3d at 1039.

Here, Plaintiff points to several statements as direct evidence of discrimination. Mr. Porcelain's comment that "the only reason why" Ms. Houserman was a business group president "is because she's a pretty blond." Dkt. # 135 at 23. As the Ninth Circuit has noted, "[s]uch derogatory comments can create an inference of discriminatory motive." *Cordova v. State Farm Ins. Companies*, 124 F.3d 1145, 1149 (9th Cir. 1997) (discussing comments that employee was hired because he was a minority). Plaintiff also points to Mr. Kornberg's comments invoking sexist stereotypes including Ms.

ORDER – 13

Houserman's "way of constantly nagging," and her "prancing around" prior to her termination. Dkt. # 135 at 23. The Court agrees that such statements serve as direct evidence of animus that create a triable issue with respect to an employer's motives. Finding such comments sufficient to preclude summary judgment, the Court need not address Defendants' arguments that Comtech had legitimate, non-discriminatory reasons for taking the actions it did and that Plaintiff fails to allege conduct that constitutes an adverse employment action. Dkt. # 111 at 22.

### D. Retaliation Claim

To establish a prima facie case of retaliation under the WLAD, Plaintiff must show that she (1) she engaged in statutorily protected activity; (2) Comtech took some adverse employment action against her, and (3) retaliation was a substantial factor behind the adverse employment action. *Washington v. Boeing Co.*, 19 P.3d 1041, 1049 (Wash. Ct. App. 2000). Like a discrimination claim under the WLAD, a plaintiff may defeat summary judgment in a retaliation claim with direct evidence or through the *McDonell Douglas* burden shifting scheme. *Jones v. King Cty. Metro Transit*, No. C07-319Z, 2008 WL 2705138, at *13 (W.D. Wash. July 9, 2008).

Here, Plaintiff alleges that direct evidence precludes summary judgment. Dkt. # 135 at 27. Specifically, Plaintiff points to Mr. Porcelain's statement to Ms. Houserman "to be careful what you wish for" in response to her raising a complaint with the board. *Id.* Defendants explain that Mr. Porcelain advised her to "be careful what [she] wished for" because if the Board were to review her compensation, the Board might discover that she had been overpaid in a prior year and claw back that money. Dkt. # 111 at 13. Whether this statement was a threat of retaliation or friendly advice, however, is a triable issue the precludes summary judgment.

### E. Wrongful Discharge in Violation of Public Policy

"The tort for wrongful discharge in violation of public policy is a narrow exception to the at-will doctrine." *Becker v. Cmty. Health Sys., Inc.*, 359 P.3d 746, 749

ORDER – 14

(Wash. 2015). To establish this claim, Plaintiff must plead and prove that "her termination was motivated by reasons that contravene an important mandate of public policy." *Id.* The Supreme Court of Washington maintains "a strict clarity requirement in which the plaintiff must establish that the public policy is clearly legislatively or judicially recognized." *Id.* Because the tort is construed narrowly, these claims have been limited to four scenarios:

> (1) where employees are fired for refusing to commit an illegal act; (2) where employees are fired for performing a public duty or obligation, such as serving jury duty; (3) where employees are fired for exercising a legal right or privilege, such as filing workers' compensation claims; and (4) where employees are fired in retaliation for reporting employer misconduct, i.e., whistleblowing.

*Id.* at 258–59.

Here, Plaintiff alleges that her termination due to her "refusal to certify financials" falls within the first scenario and thus constitutes a wrongful discharge claim. Dkt. # 135 at 28. Plaintiff relies on *Becker* to show that "when an executive is discharged for refusing to certify inaccurate financial information in violation of SOX, this 'falls squarely within' the scope of a wrongful-discharge claim." Dkt. # 135 at 28 (citing 184 Wn.2d at 259). This reliance, however, is misplaced. In *Becker*, the plaintiff was a chief financial officer of a publicly traded company required to file reports with the United States Securities and Exchange Commission. 184 Wn. 2d at 256. In this role, the plaintiff "was required by state and federal law to ensure that [his employer's] reports did not mislead the public." *Id.* After his employer was acquired, his new employer directed the plaintiff to manipulate his calculation of earnings to adhere to financial misrepresentations it had made to its creditors. *Id.* Becker refused, fearing that such false calculations would violate the Sarbanes-Oxley Act of 2002 by misleading creditors and investors. *Id.* The *Becker* court concluded that directing the plaintiff to commit a crime for which he would be personally responsible constituted a wrongful discharge in violation of public policy. *Id.*

ORDER – 15

The facts in *Becker* do not, however, reflect the facts alleged here. Comtech did not seek to compel Ms. Houserman to mislead creditors and investors and thereby subvert public policy. Nor does Ms. Houserman allege that she was terminated because she refused to commit an illegal act. The tort of wrongful discharge in violation of public policy is narrowly construed and Plaintiff's allegations do not fall within any of the four covered scenarios. In the absence of any genuine issue of material fact, the Court grants summary judgment in favor of Defendants on this cause of action.

## V.  CONCLUSION

Based on the foregoing reasons, the Court **DENIES in part** and **GRANTS in part** Defendants' Motion for Summary Judgment. Dkt. # 111. The Court **DENIES** summary judgment in the first four causes of action and **GRANTS** summary judgment in the cause of action of wrongful discharge in violation of public policy.

DATED this 30th day of December, 2020.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

ORDER – 16